**UNITED STATES of America ex rel. Frank COLE, Petitioner-Appellee,**

v.

**Harold W. FOLLETTE, Warden of Green Haven Prison, Stormville, New York, Respondent-Appellant.**

**No. 246, Docket 33840.**

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1969.

Decided Feb. 3, 1970.

Charles A. LaTorella, Jr., Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellant.

Michael O. Finkelstein, New York City, for petitioner-appellee.

Before LUMBARD, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

PER CURIAM.

This is an appeal from an order of the United States District Court for the Southern District of New York, Marvin E. Frankel, J., granting Frank Cole's petition for a writ of habeas corpus and discharging him unless the State proceeded to retrial. The basis of the decision below, 301 F.Supp. 1137, was that Cole was denied due process in his state trial[1] in November 1965 because he was unjustifiably forced to trial without counsel. There is no need to recount all of the facts here; they are set forth in great detail in Judge Frankel's opinion and we adopt his statement thereof. It is sufficient to note that the judge found the following: Cole, rather than the State, "had been the one pressing for trial." The case was then nine years old and during that period Cole had spent more than seven years in Matteawan State Hospital and most of the rest in custody. At the start of trial on Wednesday, November 3, 1965, petitioner announced that retained counsel, Edwin Spence, had been dismissed but that Harry Blum was going to be substituted; apparently Cole's mother was arranging for retention of Blum. Before Blum "declined" the retainer on the following Monday, Cole was under the understandable impression that Blum would conduct his defense. When Blum unexpectedly backed out of the case, the state judge forced Cole to go to trial immediately because of Cole's "dilatory" tactics. The judge directed Cole, admittedly a person of dubious competence, to proceed "as his own counsel." There was no adequate reason why a delay of the trial for another short period to give Cole and his family a chance to get counsel of his own choice "would have made a meaningful difference." Finally Cole's "defense" of himself was a tragic farce, which never raised "potentially substantial questions concerning sanity —both when the acts charged occurred and at the time of trial."

■ From our review of the record, we agree with Judge Frankel that the unduly hasty procedure at Cole's trial violated his constitutional right to counsel and deprived this obviously disturbed defendant of the fundamentals of due process. Therefore, we affirm the judgment below on the basis of Parts I and II of the district court opinion.[2]

■ Our dissenting brother concludes that Cole did not meet his burden of establishing that he did not fire Spence to delay his trial. It may not have been necessary for Cole to prove this; the ac-

---

1. For attempted sodomy and assault upon an 11-year old boy.

2. Part III of the district court opinion held that the state court's failure to hold a hearing on Cole's competence to stand trial also required granting the writ. We do not reach that issue.

tion of the state trial judge in first acceding to the substitution of Blum and then forcing Cole immediately to trial *pro se* when Blum unexpectedly refused the retainer a few days later might well be grounds for granting the writ regardless of Cole's earlier motivation. Assuming, however, that it was necessary for Cole to prove his own earlier good faith, we do not see why the transcript of what transpired at the fitful start of the state trial is not sufficient proof thereof. As the court below made clear, 301 F.Supp. at 1146–1149, the record showed a number of facts indicative of petitioner's good faith, in addition to what the dissent calls "self-serving statements." Chief among them was the overwhelming fact that petitioner had been incarcerated for nine years, was then confined, and had been the moving force behind the trial, over the opposition of the State. Thus, there was simply nothing from which one could reasonably infer that Cole was delaying in bad faith. The dissent suggests that the trial judge suspected that Cole was trying to get before another judge. The trial judge did not so indicate, but, in any event, a further short delay would not have required assignment to another judge. Further evidence of Cole's good faith is that Blum apparently managed to convince the state trial judge and his legal secretary—now himself a judge— that he actually was in the case. It is at least a fair inference that Cole, rather than devilishly masterminding the confu-

sion, was himself just as confused. Moreover, the state judge was irritated—and understandably so—by Blum's apparent changes of position after he had been in touch with the judge's chambers; the irritation clearly spilled over against Cole. In sum, we feel that Judge Frankel was correct in asking the State to rebut a prima facie case.[3]

We are aware that the crimes for which Cole was tried took place in September 1956, and that this disposition of the case so many years later would raise for the State at a retrial the familiar problem of proof long after the event. However, several facts tend to assuage our very real concern about this. Cole, who was sentenced to a term of 15 to 20 years, has apparently been in custody for approximately 13 years. Principally for this reason, the District Attorney for Westchester County has indicated that, in the event of affirmance of the decision below, the indictment against Cole will be dismissed.[4] Finally, in the event that the State believes that Cole's present mental condition warrants it,[5] appropriate procedures exist for determining whether his welfare or the welfare of the community requires hospitalization. We suggest that the district court, upon receipt of our mandate, give the State a reasonable period in which to invoke those procedures or, as the district court order originally provided, proceed to retrial.

Judgment affirmed.

3. We are also somewhat puzzled by the reference in the dissent to Cole's failure to waive the attorney-client privilege. Judge Frankel found that, while the two attorneys were not willing to give the State affidavits voluntarily, they were willing to testify under subpoena, although they were naturally concerned about the privilege. 301 F.Supp. at 1145 n. 7. Contrary to the implication in the dissent, there was no attempt to call them, although Blum was present in the courtroom; thus, there was no opportunity either for Cole to waive the privilege or for a ruling by the court that under the

circumstances it did not apply. It was the choice of tactics by the State's representatives that limited the record at the hearing before Judge Frankel.

4. Letter, dated September 11, 1969, from Carl A. Vergari to Attorney General Louis J. Lefkowitz.

5. By November 1965, Cole had spent more than 7 of the prior 9 years in Matteawan State Hospital. During his trial in 1965, the state trial judge "raised questions as to petitioner's competence even to stand trial." 301 F.Supp. at 1149.

LUMBARD, Chief Judge (dissenting).

I dissent.

In a state prisoner habeas corpus proceeding under section 2243, it is clear beyond any doubt that the burden of proof is on the petitioner. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953); Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); Tyler v. Beto, 391 F.2d 993, 995 (5th Cir. 1968), cert. denied, 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574 (1969). Strict observance of this standard assumes additional importance when the increasing numbers of such petitions coming to the federal courts are considered.[1] In the present case, however, Cole never discharged the burden. On the contrary, by taking no steps to waive the attorney-client privilege, he prevented the state and the court from testing the truth of his assertions despite the most diligent efforts of the state's attorney general.

Petitioner was indicted in November 1955 on charges of attempted sodomy, assault, and criminal sexual practice on a minor. For the next nine years he was more or less continuously incarcerated in state mental hospitals on findings that he was incompetent to stand trial. Early in 1965 Cole successfully petitioned for release from Matteawan State Hospital on the ground that he was sane and was remanded to the Westchester County Jail to await trial. At some time during this period, at least four months before November 1, he retained Edwin Spence to represent him at the forthcoming trial.

On November 1, 1965 the case was called and almost immediately adjourned to November 3. As will be explained more fully below, when the court opened that morning Cole, to the complete surprise of the court and the state, announced that he wished to dismiss Spence and bring in another attorney— one Harry Blum—to represent him. Spence could not enlighten the court on Cole's motives, for Cole had only told him of his "change of heart" the night before. Since Blum was not immediately available, Cole asked for an adjournment.

In light of Cole's announcement that he had been in contact with Blum since June, 1965, it might have seemed to the judge that the substitution—if indeed it was sought in good faith—could have been accomplished long before the trial began, thereby avoiding the need for adjournments. The trial judge in fact suspected that the aim of Cole's maneuver was delay, rather than obtaining the services of Blum. Nonetheless, he gave Cole a series of adjournments, totalling a week, to produce the new lawyer. Ultimately Blum appeared, only to inform the court that he was declining the retainer. Only then, after an entire week of valuable trial time had been lost, did the judge determine that the trial had to proceed with Cole representing himself. Although Cole was allowed to dismiss Spence, at the court's request Spence remained at counsel table throughout the trial, assisting Cole in his defense.

At an evidentiary hearing on this petition held by Judge Frankel on the state's demand, petitioner introduced the transcript of his state trial and rested. To the state's amazement, its motion for summary judgment on the ground that Cole had not met his burden of proof was denied. I share this surprise, for it seems clear to me that the issue of fact upon which Cole's claim rested—his good faith in dismissing counsel—is not

---

1. The number of such petitions filed in the district courts has risen from 1,903 in 1963, the year that Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), was decided, to 7,359 in 1969. See United States ex rel. Ross v. McMann, 409 F.2d 1016, 1036–1037 and n. 8 (2d Cir.) (Lumbard, J., dissenting), cert. granted, 396 U.S. 813, 90 S.Ct. 65, 24 L.Ed.2d 67 (1969); 1969 Annual Report of the Director of the Administrative Office of the United States Courts (table C-3, preliminary edition).

established by a mere transcript of his own self-serving declarations to the state trial court.

The test for determining whether a defendant who dismisses his counsel on the eve of trial has been deprived of his right to retain the counsel of his choice ultimately turns on a balance of considerations. Against defendant's right to have the lawyer of his choice and the consequent need for adjournments must be weighed the need for orderly and relatively speedy administration of justice.[2] See United States v. Llanes, 374 F.2d 712, 717 (2d Cir. 1967). Before reaching the question of balance, however, the court must determine whether the defendant in dismissing his lawyer acts in good faith or merely seeks to delay the start of his trial or create the possibility of claiming constitutional error. As we said in United States ex rel. Davis v. McMann, 386 F.2d 611, 618 (2d Cir. 1967), cert. denied, 390 U.S. 958, 88 S. Ct. 1049, 19 L.Ed.2d 1153 (1968):

"It is settled beyond question that due process requires that defendant charged with having committed a felony be allowed representation by counsel. Nevertheless, a defendant may not through a deliberate process of discharging retained or assigned counsel whenever his case is called for trial subvert sound judicial administration by such delaying tactics. * * * Though a defendant has a right to select his own counsel if he acts expeditiously to do so, he may not use this right to play a 'cat and mouse' game with the court, or by ruse or stratagem fraudulently seek to have a trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel" (citations omitted).

By its affidavit in opposition the state put in issue Cole's motives in dismissing Spence, and I fail to see how this matter is settled by a trial transcript containing little more than Cole's in-court declarations of good faith accompanied by confusing and contradictory reports of misunderstandings with counsel.

The case was called for trial on Monday, November 1, 1965, before Judge Dempsey; the very brief proceedings on that morning were devoted to scheduling, and the case was adjourned to November 3. On the 3rd Cole announced as soon as the case was called that he had dismissed his retained attorney, Spence, and was "going to bring in" attorney Blum. Evidently, he had only told Spence of this the night before, and of course the announcement came as a complete surprise to the court and the prosecutor. The prosecutor opposed any adjournment on the grounds that over the years Cole had had six or seven lawyers and that petitioner himself had insisted on a speedy trial.

Cole replied he had been in contact with Blum for some time, but that no actual substitution had been effected. To support this claim he produced some letters for the judge's inspection, which the judge summarized thus: "as far back as July, 1965 * * * he, the defendant was in contact with another attorney and as recently as October 26 * * *." The trial judge may have suspected that Cole sought to gain another trial judge by securing successive adjournments past the end of his sitting. Reasoning that the substitution could have been accomplished long before the trial began, he found these letters to be

---

2. Besides the prejudice to those awaiting trial who are denied speedy trials by adjournments to obtain new counsel, there are others whose interests are sacrificed. For example, one of the state's two principal witnesses had come from California to testify in this case, and he was forced to spend a week watching idly in court before he could take the stand. With courts crowded and calendars congested, it is absurd to ask witnesses to dance attendance upon the whims of a defendant. The presiding judge must have broad discretion in controlling the proper administration of his court, and we should only intervene when presented with convincing proof of the grossest abuses.

evidence that Cole's motive in dismissing Spence on the day of the trial was delay. Nevertheless the judge announced his intention to put the case over to the next day, advising Cole that he should produce Blum at that time or be prepared to proceed with his own defense.

The next morning Judge Dempsey recounted a phone call between his law secretary and Blum. Blum had told of being retained by Cole's mother to represent Cole, but as he was on trial with another matter he had asked that Cole's case be put over until the afternoon. The trial was then adjourned until 2 p. m. that afternoon, presumably to wait for Blum.

When Blum did not appear at the court's reopening, Judge Dempsey had his law secretary put his conversation with Blum into the record. Evidently, the judge at this point was disturbed with Blum's excuses and delays, as he mentioned the possibility of sending the trial transcript to the Appellate Division for disciplinary proceedings. The law secretary recalled that Blum had not actually said he had been formally retained, but that he had talked with Mrs. Cole and expected to be retained. Also Blum had not yet filed a notice of appearance, a precondition for representation. The case was then put over until the next morning.

On the morning of the 5th, the case was again adjourned, this time for the weekend, on the understanding that Blum would be present on Monday. Judge Dempsey stated that he had discovered that Blum had not been on trial with another case but in fact had been deceiving the court as to his unavailability. The judge announced that when Blum appeared on Monday morning, Spence would be relieved as counsel for Cole and Blum substituted in his place.

On Monday, Blum appeared but declined the retainer. When the judge reminded him that he had told the court that he had been retained, Blum suggested that "possibly * * * the wording was misconstrued." While rejecting this explanation, Judge Dempsey allowed Blum to depart from the case, stating that the lawyer had been used by Cole "as a foil for delaying the case." Spence was allowed to withdraw, and the trial proceeded with Cole defending himself. At the judge's request Spence sat at counsel's table throughout the trial and assisted Cole.

Far from establishing Cole's good faith, the trial transcript reveals little more than that Cole did not affirmatively destroy his claim with inconsistent acts or statements in court. To leap from this to a finding that he in fact was acting in good faith requires us to accept self-serving acts and declarations at face value. The state trial judge, at a far better vantage point, did not believe Cole, and because of Cole's strategy of resting on the state trial transcript in the district court, we have no more information than he had. I cannot understand how a federal court on such a cold record can say that the petitioner has established that the state judge was clearly wrong.

Petitioner's good faith in dismissing Spence turns on whether he actually believed that Blum had been retained as of November 3, and why he waited until the last minute to retain counsel in place of the attorney who had represented him for at least four months. The transcript reveals only incomplete and confused assertions by Cole, coupled with the wholly inexplicable conduct of Blum. To clarify the situation, the burden was on Cole to come forward with the testimony of Blum, Spence, and his mother, his own testimony, and any correspondence between Blum and himself.

We are not talking here about reviewing a transcript of a proceeding, such as a pretrial motion to suppress, where the adversary process has isolated operative facts upon which the federal court can make an independent and informed application of the constitutional standard. Cf. Pendelton v. Nelson, 404 F.2d 1074

(9th Cir. 1968). Nor do we have a claim of constitutional error based on in-court conduct by the judge or prosecutor so prejudicial to petitioner's rights that the record cries out for relief. Rather, Cole's claim turns on his state of mind on the day the trial began, which can only be established by extra-courtroom events. See, e. g., United States ex rel. Davis v. McMann, 386 F.2d 611, 613 (2d Cir. 1967), cert. denied, 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1969). In some respects, the constitutional issue here resembles a claim of involuntariness of a guilty plea, where the transcript shows only that the proper form of words had been used, and petitioner must prove coercion outside the courtroom to establish his claim. See, e. g., Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1961); Com. of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 121, 76 S.Ct. 223, 100 L.Ed. 126 (1956).

In this case, Judge Frankel should have required the petitioner to come forward with testimony from those who had first-hand knowledge regarding his dealing with counsel and prospective counsel—the two attorneys, the members of his family who were involved, and Cole himself.

Instead, the district court suggested that if dissatisfied with the record, the state should call these witnesses, a natural corollary to his finding that Cole had sustained his burden of persuasion. Of course nothing can be more clear than that Cole never sustained his burden or attempted to do so; he failed to call the very witnesses whose testimony was crucial to establishing his claim. In any event, at the misguided behest of the district judge, the attorney general did attempt to call them. But the attorneys involved indicated to the state that Cole would not permit them to waive their attorney-client privilege. Of course if Cole had called them to the stand or if Cole himself had testified as to his dealings with them the privilege would have been waived. See United States ex rel. Mitchell v. Follette, 358 F.2d 922, 928–929 (2d Cir. 1966).

The state by affidavit of Special Assistant Attorney General Charles La-Torella noted that it had been informed that both Spence and Blum would only furnish affidavits upon a specific waiver of the attorney-client privilege by petitioner, which was not forthcoming. Spence added that "he would not give [the state] an affidavit except under compulsion by the Court (through a subpoena) * * *."[3] I do not fully understand what sort of judicial "compulsion" could have forced them to testify against Cole's wishes. At most, the court could have put petitioner to the choice of waiving the privilege or having his petition dismissed. There is no indication in the record, however, that Judge Frankel was prepared to impose this drastic remedy.

Since the trial transcript, Cole's only evidence, does not establish that Cole's motives in dismissing Spence were based on good faith, and consequently that Judge Dempsey was in error in proceeding with the trial, I would reverse the order of the district court and direct that court to dismiss the petition. Even supposing *arguendo* that the trial record may be viewed as sufficient to require the state to go forward—a view to which I take vigorous exception—it cannot be denied that the testimony of Spence and Blum is relevant to Cole's intention and good faith. Yet this relevant and important evidence was made unavailable to the state by Cole's failure to release his attorneys from the restriction of the privilege. In such a case the petition should be denied.

3. Judge Frankel noted in his opinion below that "Messrs. Spence and Blum were reported to have expressed concern about the attorney-client privilege, but to be 'willing' to give testimony if compelled." 301 F.Supp. 1137, 1145 n. 7.