**U. S. A. ex rel. Frank COLE,**
**Petitioner,**

v.

**Warden LaVALLEE, Clinton Correctional Facility, Dannemora, N. Y.,**
**Respondent.**

**No. 73 Civ. 2051.**

United States District Court,
S. D. New York.

May 6, 1974.

---

**8**

Frank Cole, petitioner pro se.

Louis J. Lefkowitz, Atty. Gen., for respondent; Arlene Silverman, Asst. Atty. Gen., of counsel.

GURFEIN, District Judge:

Frank Cole, presently incarcerated in Clinton Correctional Facility, Dannemora, New York, petitions for a writ of habeas corpus. A judgment was rendered against him in Supreme Court, Westchester County, convicting him of the crimes of Endangering the Welfare of a Child and Sodomy in the Second Degree. On September 22, 1972, he was sentenced to indeterminate terms of one year and seven years, respectively, the sentences to run concurrently.

He appealed his conviction and it was affirmed without opinion, People v. Cole, 42 A.D.2d 1051, 348 N.Y.S.2d 539 (2d Dept. 1972); and leave to appeal to the Court of Appeals was denied.

On June 25, 1973 I denied his petition for habeas corpus for failure to exhaust state remedies. 28 U.S.C. § 2254(b). He then tendered proof of his exhaustion of state remedies, including the denial of leave by the New York Court of Appeals referred to, and I directed the State Attorney General to file answering papers on the merits.

Upon examination of relator's pro se briefs on appeal in the New York courts, it appears that he has raised substantially the same arguments in the state courts that he is raising here. Respondent Attorney General so concedes. Thus, it would appear that relator is properly before this Court, having exhausted his state remedies, both procedurally, Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); and with respect to the specific subject-matter raised in the state courts, Picard v. Conner, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

*Questions of Law Presented:*

   I.  Was relator's automobile stopped without probable cause and was the search after arrest illegal?

  II.  Are the various perjuries purportedly committed by witnesses before the Grand Jury and at trial cognizable under habeas jurisdiction?

 III.  Was relator denied a speedy trial?

 IV.  Was relator denied effective assistance of counsel?

*Statement of Facts:*

Frank Cole is no stranger to either the state or federal courts of New York. His last brush with the law, commencing in 1956, led to a thirteen year incarceration in mental hospitals and prison before a writ of habeas corpus was sustained. United States ex rel. Cole v. Follette, 301 F.Supp. 1137 (S.D.N.Y. 1969), aff'd, 421 F.2d 952 (2 Cir. 1970). In that case, Cole had been accused of

attempted sodomy, assault and criminal sexual practices upon an eleven-year old boy.

After his release by the state, he was indicted and convicted for the crime here involved, sodomy in the second degree against a thirteen-year old boy.

According to testimony at the trial, two detectives were sitting in an unmarked police car on an unrelated stake-out when they observed the defendant driving a car bearing Florida license plates to the top of a hill next to a Yonkers train station one evening in March, 1971. The detectives testified that the car proceeded down the street very slowly, weaving erratically, and returned in the direction whence it came. They observed one head visible in the car as it first passed them going down the hill with two heads seen on its return trip.

The police officers decided that the erratic driving and out-of-state license plates merited investigation and they attempted to make the car pull over for a routine license and registration check. As soon as the police turned on their police lights, however, the relator sped up his vehicle and attempted to elude them, leading the officers on a high speed chase for three to four miles until his car went into a ditch.

The officers ordered the relator out of the car, from which he emerged looking disheveled, with his fly open and his shirt pulled out. The passenger in the car, a thirteen-year old boy, whom the trial judge in marshalling the evidence in his charge to the jury, described as "young, immature, highly nervous, below average mentally, and a confused youth" told the police on the scene that he had just voluntarily committed oral sodomy with the defendant. The officer spotted a handkerchief in the front seat of the car in plain view and found it to be moist. The car was locked up at the scene and towed to the police station where, several days later, a police chemist tested the handkerchief and noted the presence of seminal fluid.

I

The defendant contends that there was no probable cause for the police to stop his car and that the handkerchief was not in plain sight, but on the floor of the car rather than in the front seat. He argues that it was not seized incident to a lawful arrest, and that its "seizure" several days after the arrest was unlawful in the absence of a search warrant.

Petitioner's claim is premised upon a purported lack of probable cause to stop his vehicle and subsequently to arrest him. He also contends that a subsequent seizure *after* the arrest had been completed required a search warrant for justification.

The police attempted to stop the car for a routine traffic law check, which is provided for by statute. Vehicle and Traffic Law, § 401(4), McKinney's Consol.Laws, c. 71. Instead of acceding to their obvious request to pull over, petitioner immediately sped away and attempted to elude the police, leading them on a high speed chase for three to four miles. When apprehended, he emerged from the car with his fly open and his shirt out. Upon speaking to the passenger and eliciting his statement of what had occurred, the police placed relator under arrest. It was contemporaneous with this arrest that the handkerchief was discovered.

Petitioner argues, *inter alia*, that the later warrantless seizure of the handkerchief in his car, days after arrest, was improper. The legality of the alleged later warrantless seizure turns on the validity of the initial search and seizure the evening of the arrest.

After the car was lawfully stopped, the statement of the young passenger was more than sufficient ground for probable cause to arrest the petitioner for the crime of sodomy. When the defendant was arrested in a vehicle capable of movement, search was permissible "of the area within the control of the arrestee." United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 471, 38

L.Ed.2d 427 (1973); Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed. 2d 456 (1973); Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). The handkerchief was plainly accessible to the defendant and under his immediate control at the moment he was placed under arrest. United States v. Artieri, 491 F.2d 440, 443 (2 Cir. 1974).

In any event, the state court found, after hearing the evidence, that the handkerchief was in plain view on the front seat, rather than, as petitioner contends, on the floor of the car. This Court has no basis for setting aside that finding of fact as it cannot be said to be clearly erroneous or the product of an improper constitutional standard. 28 U.S.C. § 2254(d); La Vallee v. Delle Rose, 410 U.S. 690, 93 S.Ct. 1203, 35 L. Ed.2d 637 (1973). In the circumstances found, the handkerchief could be valuable evidence to corroborate the young passenger's statement. *Robinson, supra; Gustafson, supra;* Chimel v. California, *supra.* Since it was observed by the police from a place where they had a lawful right to be, the handkerchief could be seized because it was "in plain view." Harris v. United States, 390 U. S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1967). Here the police officers had ample justification for their intrusion and the discovery of the obvious item of evidence was legitimately "inadvertent" rather than planned. United States v. Artieri, *supra.*

■ Under either the "plain view" doctrine or as a search incident to a lawful arrest, the evidence was properly received. Chambers v. Maroney, 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); United States v. Carneglia, 468 F.2d 1084, 1090 (2 Cir. 1972), cert. denied, 410 U.S. 945, 93 S.Ct. 1391, 35 L. Ed.2d 611 (1973).

■■ The petitioner apparently contends, however, that the handkerchief was not actually "seized" until several days later when the chemist received it for analysis. The petitioner accordingly

relies on Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), and argues that there was sufficient time for the authorities to have obtained a judicial warrant which they failed to do. The difficulty with the argument is twofold. In *Coolidge,* the car itself was unlawfully searched, under no exigent circumstances, several days after the defendant had been arrested, where the vehicle itself was not seized incidental to his arrest either in time or place. The seizure of the handkerchief here was contemporaneous with the seizure of the car and relator's arrest. United States v. Edwards, 415 U. S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (March 26, 1974). Once the accused had been lawfully arrested, the effects in his possession that were subject to search at the time and place of arrest may be seized later for use as evidence without a search warrant. United States v. Edwards, *supra.* Here, since the police had authority to retain the car, Chambers v. Maroney, *supra;* United States v. Edwards, *supra;* United States v. Carneglia, *supra;* United States v. Ellis, 461 F.2d 962, 965–967 (2 Cir.), cert. denied, 409 U.S. 866, 93 S.Ct. 162, 34 L.Ed.2d 115 (1972) they surely had authority to retain the handkerchief, which they did. Nothing required the police to keep the handkerchief in a vault rather than in the car over which they had control. United States v. Edwards, *supra;* see United States v. Caruso, 358 F.2d 184, 185–186 (2 Cir. 1966).

## II

*Perjury at Trial:*

Petitioner hurls many accusations against the witnesses at trial, accusing them of innumerable perjuries and similarly accuses his attorneys of failing to uncover and unmask them with due diligence. The latter claim is treated *infra.*

■ In reviewing a petition from a state prisoner, a federal court will not evaluate the sufficiency of evidence, unless so gross a deficiency is shown as to

constitute a deprivation of due process. United States ex rel. Griffin v. Martin, 409 F.2d 1300, 1302 (2 Cir. 1969).

■ Similarly, challenges to a witness' credibility are not cognizable in a federal habeas proceeding. United States ex rel. Griffin v. Vincent, 359 F. Supp. 1072, 1077 (S.D.N.Y.1973).

■ All the witnesses at trial, the complainant as well as the two police officers, were vigorously cross-examined by counsel. Questions of weight and credibility in such a context are normally jury functions and not for this Court to review. Suffice it to say, there was more than sufficient independent corroborative evidence to sustain the jury's finding. United States ex rel. Morton v. Mancusi, 393 F.2d 482 (2 Cir. 1968), cert. denied, 393 U.S. 927, 89 S.Ct. 262, 21 L.Ed.2d 264 (1968).

Furthermore, the trial judge, upon marshalling the evidence for the jury during his jury charge, went to great lengths to discuss the dubious mental condition and immaturity of the complaining witness. He fairly charged the jury with regard to the weight and credibility to be given to the oral testimony of the witnesses. The jury made its determination, after having had such issues clearly and fairly outlined for it. This Court will not intervene in what is wholly a state court jury function.

### III

*Denial of Speedy Trial:*

■ Petitioner claims to have been denied a speedy trial. The claim is frivolous. The defendant was arrested on March 19, 1971, indicted on May 20, 1971, and arraigned June 7, 1971. He was admitted to bail. Twice the case could not be marked ready because of pending pre-trial motions by the defendant. The case was reached for trial on August 1, 1972. There are no indications that the prosecution ever requested any adjournments. The delay appears to have been caused solely by calendar congestion.

Nor does the petitioner point to any prejudice at having had to wait fourteen months for trial; no witnesses failed to appear. He does not allege, in any event, that this issue was brought to the trial court's attention either before or during the trial.

■ In evaluating claims of denial of speedy trial, this circuit has devised a four-pronged set of factors to be weighed and evaluated, no one factor being dispositive in and of itself: the length of the delay; reason for the delay; prejudice to the defendant; waiver by the defendant. United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 90 (2 Cir.), cert denied, 396 U.S. 936, 90 S.Ct. 269, 24 L.Ed.2d 236 (1969); United States v. Fitzpatrick, 437 F.2d 19, 26–27 (2 Cir.); United States v. Schwartz, 464 F.2d 499, 504 (2 Cir.), cert. denied, 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

■ In Barker v. Wingo, 407 U.S. 514, 533, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court ruled that all of the above factors should be weighed with each other and considered together with other relevant circumstances. Thus, the failure of a defendant to request a prompt trial may constitute a waiver of that right, even though waiver is but one factor to be considered. United States v. Singleton, 460 F.2d 1148, 1151 (2 Cir. 1972); United States v. Schwartz, *supra*; Barker v. Wingo, *supra*.

Most important is the utter failure of the relator to pinpoint any way in which he has appreciably suffered by the delay, other than the fairly routine allegation of the dimming of witnesses' memories. A review of the trial transcript does not reveal any such gross memory lapses, other than some very minor inconsistencies that invariably appear in testimony.

Petitioner has failed to sustain his burden of showing any prejudice in the

fourteen month delay. The so-called six-month rule of the state courts (CPL § 30.30 McKinney's Consol.Laws, c. 11–A) is not a rigid mechanistic formula that requires a trial or automatic dismissal within six calendar months. People v. Ganci, 27 N.Y.2d 418, 318 N.Y.S.2d 484, 267 N.E.2d 263 (1971). Petitioner's speedy trial claim is without merit.

## IV

*Denial of Effective Assistance of Counsel:*

■ Petitioner claims that both trial and appellate counsel incompetently represented him and did not adequately address themselves to the various perjuries purportedly committed by the complaining witness and police officers.

■ Contrary to petitioner's allegations, a thorough perusal of the trial record belies his contentions in all material aspects. Trial counsel proceeded vigorously in his behalf and showed not inconsiderable skill in cross-examination of the various witnesses and ferreting out inconsistencies in their testimony. Petitioner received skillful, not merely adequate, representation at every phase of the trial. Merely because his attorney made tactical decisions on the most effective method of presenting a defense and cross-examining witnesses is not proof of his incompetence. (Indeed, the trial transcript reflects that counsel suggested additional lines of defense, e. g., insanity, which were summarily rejected by the relator.)

Similarly, petitioner raises the same objection as to his appellate counsel. Some background is necessary to put these claims in perspective. According to an affidavit in opposition submitted by the State Attorney General, the petitioner had been assigned six different appellate attorneys to prosecute his appeal over a seven month period, each of whom was relieved at petitioner's insistence. The last attorney, who did indeed submit a brief, was similarly found unsatisfactory by petitioner who insisted upon filing his own pro se briefs in addition. This Court has inspected those pro se briefs. They are often incoherent, rambling, diffuse and disorganized to the point of gibberish. The same may be said for petitioner's papers to this Court. His counsel's brief on appeal, in contradistinction, is clear and lucid.

■ This Court is not governed by petitioner's own evaluation of counsel. This Circuit is guided by its own stringent standard of long-standing in evaluating the conduct of trial and appellate counsel. Conduct of counsel amounts to a constitutional denial of representation entitling a defendant to relief only where it has proved to be "of such a kind as to shock the conscience of the Court and make the proceedings a farce and mockery of justice." United States ex rel. Curtis v. Zelker, 466 F.2d 1092, 1101 (2 Cir. 1972), cert. denied, 410 U. S. 945, 93 S.Ct. 1405, 35 L.Ed.2d 612 (1973); United States ex rel. Marcelin v. Mancusi, 462 F.2d 36, 42 (2 Cir. 1972), cert. denied, 410 U.S. 917, 93 S. Ct. 977, 35 L.Ed.2d 279 (1973); United States ex rel. Crispin v. Mancusi, 448 F.2d 233 (2 Cir.), cert. denied, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 288 (1971). Accordingly, petitioner's claims of denial of effective assistance of counsel are wholly without merit.

The petition is denied. Accordingly, petitioner's recently filed motion for bail pending disposition of this action is similarly denied.