UNITED STATES of America ex rel. John MARTINEZ, Relator-Appellant,

v.

Vincent R. MANCUSI, Warden of Attica State Prison, Attica, New York, Respondent-Appellee.

No. 406, Docket 71-1851.

United States Court of Appeals, Second Circuit.

Argued Jan. 5, 1972.

Decided Jan. 26, 1972.

Oakes, Circuit Judge, dissented and filed opinion.

William C. Pelster, New York City, for relator-appellant.

Ilene J. Slater, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen., of the State of New York, and Samuel A. Hirshowitz, First Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

Before FRIENDLY, Chief Judge, and MOORE and OAKES, Circuit Judges.

MOORE, Circuit Judge:

Relator-appellant, John Martinez (Martinez), appeals from an order denying without a hearing his petition for a writ of *habeas corpus* wherein he sought to review a judgment of conviction entered in the County Court of Monroe County, New York, upon his plea of guilty to the Class C felony (second degree) of selling a dangerous drug.[1]

Martinez challenges the validity of his conviction, claiming that his guilty plea was not voluntary because it was "based upon misunderstanding and confusion and made under threat of immediate trial without the effective assistance of counsel" (Applt's Br. p. 7). The facts surrounding the plea in the County Court reveal the following.

October 23, 1968, Martinez indicted in the Monroe County Court for selling a dangerous drug in the second degree (N.Y. Penal Law, McKinney's Consol. Laws, c. 40, § 220.35) and also in the third degree (*Id.* § 220.20).[2]

November 22, 1968, Martinez indicted (Monroe County) for selling a dangerous drug in the second degree (Indictment 593).

November 25, 1968, arraignment. Martinez represented by retained counsel. Martinez pleaded "not guilty" to crime of selling a dangerous drug in the second degree (Indictment 593). Coun-

---

1. The judgment was affirmed by the Appellate Division of the New York Supreme Court, Fourth Department, People v. Martinez, 34 A.D.2d 174, 311 N.Y.S.2d 117, leave to appeal to the New York Court of Appeals denied and certiorari was denied by the United States Supreme Court, 401 U.S. 941, 91 S.Ct. 945, 28 L.Ed.2d 222 (1971).

2. Apparently pleas of "not guilty" were entered as to this indictment.

sel requested an adjournment until December 3, 1968. Granted.

December 3, 1968. Martinez' counsel requested case be placed on the trial calendar. Any motions to be made "before December 30th trial calendar date."

December 30, 1968, January 27, 1969, case appeared on "ready trial" calendar.

February 17, 1969. Colloquy in Court, the Court saying that disposition of the two indictments might be made through one plea "but it was not a plea to Selling a Dangerous Drug in the Third Degree" (Tr. 10). Martinez' counsel then said that he was not prepared to go to trial although his office had answered "ready" for the February calendar. He requested an adjournment "until at least tomorrow morning" because he couldn't defend Martinez "without some preparation." The Court granted an adjournment until 3:00 P.M. Upon a later call Martinez was advised of the charges and of the District Attorney's understanding based upon word from Martinez' counsel that he wished to substitute a plea of "guilty" under Indictment 593 to the crime of selling a dangerous drug in the second degree in satisfaction of Indictments 512 and 593.

To questions by the Court to Martinez and his counsel to verify Martinez' understanding of all consequences, counsel replied, "I have explained to Mr. Martinez the difference between the two degrees of the crime, yes." Martinez responded that he knew that both degrees were felonies and that he understood that second degree "permits a greater, longer sentence" than third degree (Tr. 13, 14). Finally, the record discloses Martinez' answers that his plea was voluntary, entered with the knowledge and consent of his attorney, given without promises or threats, without knowledge of what the sentence might be and without inducement of any nature. The plea of guilty to second degree was accepted. March 7, 1969 was set for sentence. March 7, 1969 Martinez' counsel requested an adjournment. Granted to March 14th.

March 14, 1969. Martinez' counsel sought to withdraw guilty plea, because of asserted "confusion about the whole matter," lack of preparedness and the necessity of his picking a jury in another case. The Court sentenced Martinez who was then on probation and had been previously convicted of assault (second degree) to 5 to 15 years for selling "narcotic drugs, particularly, heroin." (Tr. 20, 21).

The facts with respect to Martinez' background in crime are set forth in the Appellate Division opinion (nine convictions in nine years, ranging from burglary to six narcotics convictions). 34 A.D.2d at 176, 311 N.Y.S.2d 117. That Court affirmed the denial of the motion to withdraw the plea. The District Court below found that the plea was knowingly made with full knowledge of the consequences and that Martinez had not been denied effective assistance of counsel.

There is no support for any argument that a promise of any sort was made or even intimated by the County Court judge. Nor is there proof that the prosecutor induced the plea by an undertaking to recommend to the Court acceptance of a particular plea. Even had there been such proof, Martinez' counsel was experienced enough to know that the parties *inter se* could not bind the Court. For a situation most analogous to the present case, see Judge Kaufman's opinion and the cases cited therein, in United States ex rel. Rosa v. Follette, 395 F.2d 721 (2d Cir.), cert. denied, 393 U.S. 892, 89 S.Ct. 216, 21 L. Ed.2d 172 (1968), a decision which supports the denial of a motion to withdraw a guilty plea under rather similar circumstances. Nor is there anything in the Supreme Court's recent decision in Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, 1971, which dictates a different result. In *Santobello* the plea was made "on condition that no sentence recommendation would be made by the prosecutor." (404 U.S. at 262, 92 S.Ct. at 499). The prosecutor (a different prosecutor than the one who

had negotiated the plea) "recommended the maximum one-year sentence.", (92 S.Ct. at 497) and cited the defendant's previous criminal record. There was a clear case of a broken promise—of the very condition on which the plea was obtained. Here no such situation existed. *See also*, X. v. United States, 2d Cir., 1971, 255 F.2d 454, 261 footnote.

Martinez relies heavily on his counsel's profession of unpreparedness. The facts belie this claim. Counsel had had months to confer and prepare. He had announced readiness for trial. He knew the case was on the "ready" calendar. He made no claim of missing or unavailable witnesses. He gave no reasons for the need of any postponement. In fact the very request for merely an overnight adjournment would indicate the lack of complexity of the defense.

The District Court's finding that "the petitioner's rights under the federal constitution have not been infringed in respect to the matters complained of" is based on a solid foundation of fact.

The Court expresses its appreciation to William C. Pelster, Esq., for his capable representation of the appellant.

Affirmed.

OAKES, Circuit Judge (dissenting):

A brief recital of the facts is necessary because the statement of them in the majority opinion overlooks some of the key elements underlying appellant's claims.

In the clubby atmosphere of the County Court of Monroe County, New York, where the assistant district attorney, "Lew," appointed defense counsel, "Bob," and the judge have just met in chambers in the absence of the defendant to discuss the case, the district attorney addresses the defendant in open court directly. He asks the defendant whether through his attorney he wishes to change his not guilty pleas and to enter a plea of guilty to the second count —selling dangerous drugs *in the third degree*. The court interrupts the district attorney and says that "so far as I am concerned, it may be that two indictments were to be disposed of through one plea, but it was not a plea to Selling a Dangerous Drug in the Third Degree. That was no part of our talk." By "talk," the judge presumably is referring to the talk just had in chambers, where apparently a plea bargain had been struck informally and in the presence of the trial court, if not the defendant.

Defense counsel disputes the judge as to what had been agreed to and when he asks the district attorney on the record for his version, the latter replies, "No comment." Yet it is that very same district attorney who just asked the defendant whether the latter wished to plead to third degree selling.

Under the circumstances, defense counsel asks for a one day adjournment, pointing out that while the case was answered ready at the call of the February calendar he was "not informed until this morning that we were proceeding." The court denies this application and defense counsel says he is going to withdraw "because I can't adequately defend this man without some preparation, and I think the District Attorney should at least give me that kind of notice." The court gives counsel time enough on the spot to talk to the defendant who under the circumstances changes his plea to guilty of selling in the second degree. The usual ritual then takes place, with only one slip in the dialogue immaterial here (when the defendant says he has been told what sentence he would receive and his attorney denies this, whereupon the defendant agrees that he has not been told).

Prior to sentencing the defendant's attorney seeks leave to withdraw the plea of guilty and to put the matter back on the trial calendar in an informal, oral motion since he has been "unable to get the papers prepared" because of his own "commitments" and "schedule." This motion is denied. On the sentencing, beyond seeking to preserve the record on the motion to withdraw the plea, counsel

indicates that the defendant has a big family, his wife is in the courtroom and that "I have nothing more to say other than what I have said in chambers." Presumably this refers to another off-the-record talk in the defendant's absence where his sentencing was discussed. Out of all this, the defendant Martinez receives a sentence with a maximum of fifteen years and a minimum of five years at Attica.

An involuntary plea of guilty, Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962), violates due process "in both State and Federal prosecutions." Oaks v. Wainwright, 445 F.2d 1062, 1063 (5th Cir. 191). Defendant was faced with the dilemma of proceeding immediately to trial with a defense attorney who had just announced that he was not ready to proceed and who had asked to withdraw. How such a situation could result in the exercise of "a voluntary and intelligent choice among the alternative courses of action open to the defendant," North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970), the majority opinion fails to disclose. As Judge Kaufman pointed out with pride in United States ex rel. Rosa v. Follette, 395 F.2d 721, 724 (2d Cir.) cert. denied, 393 U.S. 892, 89 S.Ct. 216, 21 L.Ed.2d 172 (1968), "This court has gone to great lengths to protect against convictions based upon guilty pleas due to coercion, misunderstanding or general confusion." *See also* United States ex rel. Carter v. LaVallee, 441 F.2d 620 (2d Cir. 1971); United States ex rel. McGrath v. LaVallee, 319 F.2d 308, 311 (2d Cir. 1963). Here all three elements were present: "coercion" in that the court was demanding trial with counsel unprepared; "misunderstanding" in that apparently both the prosecuting and defense attorneys thought the plea was to be to third degree selling and the court thought otherwise; and "general confusion" in that the key "talk" occurred in defendant's absence, and the prosecuting attorney failed to back up

his own understanding when asked to do so on the record.

Moreover, the right to counsel under the sixth and fourteenth amendments means the right to counsel that has had opportunity to prepare. While there doubtless had been time here, apparently counsel had been hopeful of negotiating some plea bargain. Following what was clearly at least a misunderstanding on the terms of that bargain, counsel asked only for a one-day delay. As the Supreme Court said in Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964):

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Avery v. Alabama, 308 U.S. 444, [60 S.Ct. 321, 84 L.Ed. 377.] *Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality.* Chandler v. Fretag, 348 U.S. 3, [75 S.Ct. 1, 99 L.Ed. 4.]

(Emphasis supplied; the matter italicized was rather significantly omitted by the device of three asterisks in the State's brief's quotation of this case.)

In a case involving an adjournment after trial had commenced, and hence all the more compelling in this case, where the trial had not yet begun, Judge Moore said: "An adjournment would not have been an unduly burdensome hiatus in the trial, since the witnesses were few and the factual issues clearly defined." United States v. White, 324 F.2d 814, 816 (2d Cir. 1963). *See also* United States v. Mitchell, 354 F.2d 767, 769 (2d Cir. 1966) (allowing only five days to obtain new counsel held an abuse of discretion). The fact that counsel requested only an overnight adjournment is used against the defendant by the majority here on the basis that it "would

indicate the lack of complexity of the defense." This may be true although I do not believe it is proper for this court to speculate what the nature of the defense might have been;[1] but surely the request was not unreasonable when there had been at least a misunderstanding on the plea bargain.

I do not understand the majority opinion's reference to Martinez' background and other convictions. If the reference is meant to indicate that Martinez knew what he was doing when he was pleading guilty I suppose that is one inference that is permissible; another is that he might have known from his previous experience how disastrous it can be for a defendant—especially one with a criminal record—to go to trial with counsel unprepared. I cannot suppose that the reference to Martinez' criminal record is intended to imply that probably he was guilty as he pleaded, since such speculation would be improper.

But I think that the majority opinion is wrong, not just on the points of constitutional law mentioned. I think it is wrong as a matter of judicial administrative policy. I refer, of course, to the proposition that in the interests of promoting plea bargaining "a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Here every indication is that the prosecutor reneged on his part of the bargain to accept a plea to selling in the third degree. Otherwise, why would he have said, "No comment"? Accordingly, under Santobello we should remand, leaving it to the state court to determine whether there should be "specific performance of the agreement on the plea"—here an opportunity to plead to

sale in the third degree—in which case sentencing should certainly be before a different judge—or whether the relief sought, that is, withdrawal of the plea of guilty to sale in the second degree, should be granted. The majority says that this was not a "situation" of a broken promise. But to what was the prosecutor referring when he himself asked the defendant initially if he would plead to the third degree count? Even if there were a simple misunderstanding, however, the policy of *Santobello* should apply. Under no version of the facts can it appear that there was not at least such a misunderstanding.

I dissent.

---

1. Hawk v. Olson, 326 U.S. 271, 278, 66 S.Ct. 116, 120, 90 L.Ed. 61 (1945) ("Continuance may or may not have been useful to the accused but the importance of the assistance of counsel in a serious criminal charge after arraignment is too large to permit speculation on its effect").