No. 71–6518. MARTINEZ *v.* MANCUSI, CORRECTIONAL SUPERINTENDENT. C. A. 2d Cir. Certiorari denied.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE DOUGLAS concurs, dissenting.

I dissent. I think petitioner's guilty plea entered in New York state court was clearly involuntary, particularly after our decision last Term in *Santobello* v. *New York,* 404 U. S. 257 (1971).

On October 23, 1968, petitioner was charged in an indictment returned in New York state court with one count of criminally selling a dangerous drug in the second degree [1] and one count of criminally selling a dangerous drug in the third degree.[2] In November 1968, a second indictment was returned against petitioner in state court charging him with a single count of criminally selling a dangerous drug in the third degree. Prior to the 1969 amendments of the New York Penal Law, criminally selling a dangerous drug in the second degree was punishable by a maximum of 15 years' imprisonment, while the maximum sentence under a third-degree charge was seven years' imprisonment.[3] At arraignment, petitioner pleaded not guilty to all the charges; the case was set for trial.

On February 17, 1969, the State moved for trial. Before the proceedings commenced, the prosecutor, the defense counsel, and the trial judge met in the judge's

---

[1] N. Y. Penal Law § 220.35 (Supp. 1972–1973).

[2] N. Y. Penal Law § 220.30 (Supp. 1972–1973).

[3] See N. Y. Penal Law § 70.00, subds. 2 (c)–(d) (1967).

chambers—in the absence of the petitioner—to discuss the case. When the case was subsequently called for disposition, the prosecutor began by stating that he understood petitioner wished to withdraw his earlier pleas of not guilty and to "enter a plea of guilty to the second count of [the October 23 indictment] . . . charging [him] with the crime of Criminally Selling a Dangerous Drug in the Third Degree." At this point the court interrupted the prosecutor and the following exchange occurred:

"The Court: Wait a minute. Third Degree?

"[Prosecutor]: The second count, your Honor, of [the first indictment].

"[Defense Counsel]: There are two counts of Second Degree and one of Third Degree.

"The Court: That is not what I understood.

.    .    .    .    .

"(Whereupon a conversation was had off the record).

"The Court: . . . [A]s far as I am concerned, it may be that two indictments were to be disposed of through one plea, but it was not a plea to Selling a Dangerous Drug in the Third Degree. That was no part of our talk.

"[Defense Counsel]: It was this afternoon, Judge.

"The Court: It was not part of our talk."

Unable to obtain the plea he had expected, defense counsel requested a one-day adjournment because he was "not prepared to go to trial."

"The Court: The case will proceed to trial or disposition right now.

"[Defense Counsel]: . . . This case was answered ready by my office at the February calendar, but I was not informed until this morning that we were proceeding. And I would again respectfully request

that the court grant me until at least tomorrow morning.

"The Court: Application denied."

When the defense counsel subsequently turned to the prosecutor—the same prosecutor who only a moment before had stated in open court that he understood the defendant wished to change his pleas of not guilty to a plea of guilty to the third degree charge—for assistance in clearing up the confusion, the only response was, "No comment."

Defense counsel indicated that he was going to withdraw "because I can't adequately defend this man without some preparation, and I think the District Attorney should at least give me that kind of notice." Defense counsel was given a few moments to speak with petitioner. Faced with the dilemma of either proceeding immediately to trial on all three charges with unprepared counsel or pleading guilty to one count of selling a dangerous drug in the second degree, petitioner not unexpectedly chose the latter course as the lesser of two evils. The usual litany of the plea then followed.[4] In advance of sentencing, petitioner sought to withdraw his plea, but this was denied and he received an indefinite sentence of from five to 15 years' imprisonment. After appealing his case through the state courts,[5] petitioner sought review of his plea by way of federal habeas corpus. The District Court denied relief without a hearing, and

---

[4] Indeed, there was only a single slip by petitioner when he indicated that he had been told what sentence he would receive. Defense counsel quickly denied this, and petitioner naturally corrected himself.

[5] *People* v. *Martinez*, 34 App. Div. 2d 174, 311 N. Y. S. 2d 117 (1970), leave to appeal to the New York Court of Appeals was denied, and a petition for a writ of certiorari was denied by this Court, 401 U. S. 941 (1971).

the Court of Appeals affirmed, with one judge dissenting, 455 F. 2d 705 (CA2 1972).

Last Term in *Santobello* we emphasized the importance of the plea-bargaining process: "If every criminal charge were subjected to a full-scale trial, the States and Federal Government would need to multiply by many times the number of judges and court facilities," 404 U. S., at 260. But a guilty plea necessarily involves the waiver of a variety of fundamental constitutional rights, see, *e. g.,* *Duncan* v. *Louisiana,* 391 U. S. 145 (1968) (right to jury trial); *Pointer* v. *Texas,* 380 U. S. 400 (1965) (right to confront one's accusers), and the process by which it is obtained must therefore be governed by a standard of absolute fairness. The plea must be the result of "a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina* v. *Alford,* 400 U. S. 25, 31 (1970). See also *Boykin* v. *Alabama,* 395 U. S. 238, 242 (1969); *Machibroda* v. *United States,* 368 U. S. 487, 493 (1962). I think it clear that this petitioner was denied such a choice. To be sure, it is in the nature of the plea-bargaining process that some pressure is brought to bear on the defendant to enter a plea. But here the normal pressures inherent in the plea-bargaining process were improperly augmented by both the prosecutor and the trial judge.

In *Santobello, supra,* at 262, we said "that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." In that decision, we condemned a prosecutor's failure to abide by the agreement of an associate who had promised to make no recommendation as to sentence in return for the guilty plea. What occurred here was far more serious. It would be naive to deny that, at least as between defense counsel and the prosecutor, a clear understanding had been reached in the judge's chambers

that petitioner would be allowed to plead guilty to the third-degree charge. The prosecutor's opening remarks in the subsequent proceedings unquestionably indicate that this was the case. Yet when defense counsel turned to the prosecutor for corroboration that the deal struck was indeed for a plea to the less serious charge in the third degree, he received only the unhelpful "No comment." This is not fulfillment by the prosecutor of his promise. And at this juncture it is impossible to assess what impact affirmative support from the prosecutor might have had upon the trial judge, who quickly became unreceptive to the unsupported efforts of defense counsel to clarify the situation.

I would not stop in this case, however, with the prosecutor. For the trial judge saw fit to become a party to the plea negotiations and agreement. Whatever the considerations when the judge is not a participant in the plea-bargaining process, it seems to me that once he has injected himself into that process he must be held to the same strict standard of fairness as the prosecutor. This is not to say that the trial judge should be deprived of his traditional discretion to reject a plea of guilty; I agree that "[t]here is . . . no absolute right to have a guilty plea accepted," *Santobello, supra,* at 262, citing *Lynch* v. *Overholser,* 369 U. S. 705, 719 (1962). By the same token, though, a trial judge cannot be allowed to use his discretion to apply undue pressures on a defendant. Nothing could be more destructive of the integrity—and ultimately the viability—of the plea-bargaining process. I do not doubt that in this instance there was a misunderstanding between the prosecutor and defense counsel, on the one hand, and the trial judge, on the other, as to the charge to which petitioner would be allowed to plead guilty. In light of this confusion over the plea agreement, the trial judge was justified in refusing to accept the plea to the third-degree

charge. But he certainly was not justified in visiting the consequences of the misunderstanding and the resulting confusion on petitioner by compelling him either to go to trial on all three charges with counsel who was unprepared or to plead guilty to the more serious charge. Having been a party to the negotiations and having thereafter refused to accept the plea that both the other parties to the negotiations thought was agreed upon, the trial judge was obligated to allow petitioner to extract himself from the predicament in which he had been placed by the misunderstanding that subsequently became apparent. Consequently, I believe that the judge should at least have granted the one-day continuance requested by defense counsel.

It is no answer that defense counsel should have been prepared to proceed to trial at once because his office had answered ready to the call of the February calendar. First, it is not disputed that defense counsel was not informed until the morning of the proceeding that the case was to be heard. We cannot ignore that in these days of crowded dockets, attorneys—as well as judges—are often forced to juggle unreasonably large case loads. Moreover, regardless of whether defense counsel technically should have been ready for trial because the case had previously been answered ready at the call of the February calendar, counsel undoubtedly could have made valuable use of the time between the conference in the judge's chambers and the formal disposition of the case had he not been under the misimpression that a bargain had been struck.[6] In short, I question whether defense counsel can be faulted for his unpreparedness for immediate trial upon discover-

---

[6] Although the record is not entirely clear on this point, it does appear that a substantial amount of time elapsed between the conference in the judge's chambers and when petitioner's case was called for formal disposition.

ing that a plea to a third-degree charge would not be accepted. But whatever the justification for defense counsel's unpreparedness, it was the petitioner, not his counsel, whom the trial judge forced to bear the consequences. I cannot accept this penalizing of petitioner for the conduct of his attorney, given the importance of the rights at stake. Weighed against the right of effective assistance of counsel, the request for a one-day continuance was hardly unreasonable. Previously we have said:

> "The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. . . . Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. . . ." *Ungar* v. *Sarafite,* 376 U. S. 575, 589 (1964).

And the alternative to proceeding with unprepared counsel was the waiver of a variety of important constitutional rights by way of a plea of guilty to a charge as to which, as a matter of unfettered choice, petitioner was obviously not prepared to concede guilt. Therefore, I think—as I have already indicated—granting of the short continuance [7] requested was incumbent on the trial judge

---

[7] The Court of Appeals majority, in discounting the unpreparedness of defense counsel and the importance of the continuance, suggested that "the very request for merely an overnight adjournment would indicate the lack of complexity of the defense." We have noted, though, that whether or not a continuance would in fact "have been useful to the accused, . . . the importance of the assistance of counsel in a serious criminal charge after arraignment is too large to permit speculation on its effect." *Hawk* v. *Olson,* 326 U. S. 271, 278 (1945).

once he had rejected the plea bargain that everyone else understood to have been struck. The judge's refusal to grant the continuance can only be viewed as an unjustified compounding of the coercive circumstances under which petitioner's plea was procured.

Hence, I would grant the petition for certiorari and remand the case with instructions that petitioner's plea be vacated and he be allowed to replead to the original charges. In *Santobello*, the Court declined to direct that the guilty plea there at issue be vacated and simply remanded for reconsideration. The broken promise in *Santobello*, however, affected only the petitioner's sentence, not the charge to which he had pleaded guilty. Here, by contrast, the conduct of the prosecutor and the trial judge improperly coerced petitioner to plead guilty to the second-degree charge.

