**UNITED STATES ex rel. Francisco MARTINEZ, a/k/a Tony Cruz, Petitioner-Appellant,**

v.

**Warden James A. THOMAS, Respondent-Appellee.**

**No. 97, Docket 75–2066.**

United States Court of Appeals, Second Circuit.

Argued Sept. 18, 1975.

Decided Dec. 8, 1975.

Douglas S. Eakeley, New York City (Debevoise, Plimpton, Lyons & Gates, New York City, of counsel), for petitioner-appellant.

Ralph L. McMurry, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., and Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for respondent-appellee.

Before FRIENDLY, TIMBERS and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge:

A New York State prisoner, Francisco Martinez, appeals from the denial of his petition for a writ of habeas corpus by the District Court for the Southern District of New York (Tyler, *Judge*) after an evidentiary hearing.

I

Martinez was arrested on February 15, 1966 for allegedly participating in an attempted robbery and assault committed six weeks earlier. The trial, which he conducted *pro se* in circumstances to be related, began on August 4, 1966. On August 12, 1966, after deliberating for 5½ hours, the jury found appellant guilty of attempted robbery, attempted grand larceny, assault (second degree) and possession of a dangerous weapon. He received concurrent sentences of 7½ to 15 years on October 4, 1966. He has served about nine years.[1]

In 1951 Martinez had been certified as a mental defective and undifferentiated moron with an I.Q. of 63 by the Wassaic State School where he had been committed. In 1954 he had been certified by Bellevue Hospital to Kings Park State Hospital where he remained until 1956. Between 1959 and 1963 he had been tested and examined repeatedly at the various state penal institutions where he was serving a sentence. Only a year before his arrest he had been admitted to Bellevue Psychiatric Hospital on application of his brother-in-law. The hospital reports indicate that he was "emotionally severely disturbed [with a] psychotic character disorder . . . with marked sociopathic trends." Six days later he escaped from Bellevue. The hospital sought an adjudication that he was mentally ill, but he refused to respond. His escape took place only 11 months before the crime charged. At sentence, after some of these facts had been revealed to the state trial judge for the first time,

---

1. He was paroled on March 15, 1972 and rearrested on July 31, 1972 and charged with violation of parole on August 8. His original sentence was reinstated and he is currently serving the balance of his term.

a defense motion for a psychiatric examination was denied.[2]

Immediately following his sentencing, appellant attempted suicide by swallowing pins and razor blades. The history of psychotic episodes continued. Prison records in 1967 indicated that Martinez was "psychotic and dangerous to himself and others." In 1970, he was committed to the Dannemora State Hospital for the mentally ill for six months. Reports indicate that he had periods of normalcy with remissions. Both doctors who testified for him at the *coram nobis* proceedings in the state court and in the federal hearing below believed that he was incompetent to waive counsel at his trial in 1966.

The events that led to his "decision" to waive counsel and proceed *pro se* may now be recounted as a tragedy of errors. Neither the Legal Aid Society nor the trial judge knew of Martinez' history of mental illness.

Martinez first appeared with attorney Gottlieb in March 1966 in an effort to reduce bail. He soon dismissed Gottlieb because Gottlieb had erroneously informed him that his appeal in an earlier case had been abandoned. He was given an adjournment to get another lawyer.

Petitioner's mother then hired a Mr. Garcia as counsel. He appeared for petitioner on May 5, 1966, requesting a two-week adjournment to reach petitioner's family. The attorney refused to move for reduction of bail, and petitioner himself made the motion, without success. Two weeks later, petitioner appeared in court alone and requested the court to appoint counsel for him, as he had dismissed Mr. Garcia because his fees were too high and because he had not moved for bail or otherwise "represented his interests." Petitioner's brief indicates that he did not discuss the merits of his case with either Mr. Garcia or Mr. Gottlieb.

The court then appointed the New York Legal Aid Society to represent Mr. Martinez. On May 24 attorney-of-record Leopold interviewed petitioner for the first time. During this interview, Martinez told Mr. Leopold that he had not committed the crimes charged, and that he had alibi witnesses. He failed to tell Mr. Leopold their names, however. From May 24 until August 3, no attorney communicated in any way with Mr. Martinez. Attorney Leopold went on a month-long vacation in July, and, as the District Court found, "communications within the Legal Aid Society appear to have broken down."

Petitioner's case was called for trial several times in early summer, but the correctional authorities failed to produce him or notify him that his case had been called, and Legal Aid did not appear for him. In late June, Attorney Cropper of Legal Aid agreed to a trial date of July 5 for Martinez, apparently unaware that Mr. Leopold was then on vacation and that the Legal Aid investigation was pending. Predictably, on July 5, no lawyer appeared. On the district attorney's mistaken assurances to the court that he had been so informed by Legal Aid, the case was marked as "ready for trial." Later in July, Attorney Selwyn of Legal Aid, simply on the knowledge that Leopold would be back by then, requested an August trial date, and the date of August 4, 1966 was set for trial.

On August 3, after his return from vacation, Attorney Leopold appeared before the calendar judge and requested a two-week adjournment because the Legal Aid Society's normal investigation was still pending, and there was an ongoing effort to procure a distant witness. The request was denied on the ground that there had already been 16 adjournments in the case. The same day, Leopold interviewed Martinez again, inform-

2. The record indicates some disagreement among psychiatrists as to Martinez' mental condition during his "normal" periods and remissions. Judge Tyler summarized the record as "conflicting" on the issue of petitioner's probable competence to waive counsel and to represent himself in 1966.

ing him *for the first time* that his case was set for trial the following day. At this time Martinez provided Leopold with the first names of his alibi witnesses, indicating that Leopold should ask Martinez' sister about their surnames as he did not know them.

On August 4, 1966, Leopold renewed his request for an adjournment before the judge in the Trial Part, stating that he was unprepared for trial. He did not, however, explain how the case had inadvertently come to be set for trial prematurely. The motion was denied, without any inquiry by the court concerning the reasons for the unpreparedness. After the motion was denied, petitioner himself requested an adjournment to find another attorney; this motion was also denied, the court indicating that the defendant was merely stalling for time. In the course of the colloquy, petitioner repeatedly expressed a desire for another attorney and for more time to find his witnesses. Finally, after the court had ordered that the jury call begin, petitioner announced for the first time (after again repeating his desire for his own lawyer): "In that case, I'd like to represent my own self."

The trial court agreed to this at once, and without any further colloquy, directed Leopold to remain at the table with petitioner to assist him and to act as co-counsel. The court then proceeded to jury selection and trial. Petitioner conducted his own defense, occasionally consulting with Mr. Leopold. He cross-examined two government witnesses, and presented other witnesses on direct examination. He repeatedly renewed his request for adjournments to contact his family and retain counsel.[3]

The Legal Aid Society failed to prosecute his appeal, which was dismissed as abandoned in April 1968, while petitioner was in Dannemora State Hospital. Petitioner subsequently exhausted his state remedies through *coram nobis* proceedings, which upheld the convictions.

The instant petition was filed *pro se* in January 1974. After an evidentiary hearing in the district court, the petition was denied.[4] The district court found that petitioner was competent at the time of his trial to waive counsel, that he had validly waived counsel, and that he had not been deprived of his right to counsel by the trial judge's failure to grant an adjournment, nor of any due process rights by the court's failure to inquire into his competence.

## II

This is a case where we must order the granting of a writ of habeas corpus which would doubtless not have been required had the able trial judge been apprised initially of the true facts. The defendant Martinez was an incompetent or a borderline case at best, with a prolonged record of hospitalization for mental illness, which the judge did not know until the time of sentence, when he refused to take any action regarding the revelation. The judge was also unaware of the incomprehensible lack of communication with the lawyers for the Legal Aid Society, making their preparation for trial utterly inadequate. The judge did not know any of these facts when he ordered the defendant to trial, as he testified in the *coram nobis* proceeding. When the defendant was refused an adjournment, the judge failed to make any inquiry with respect to the defendant's

**3.** In the midst of the seven-day trial, after petitioner had finally been able to reach his mother (who had no phone), he informed the court that she had hired another attorney who would be available in the afternoon. As petitioner was about to begin presenting the defense case, he requested an adjournment until the afternoon when the attorney could appear. The motion was denied. When the attorney (Mr. Brown) did appear, the court refused to permit him to enter the case to act for petitioner.

**4.** This hearing was held upon recommendation by the magistrate, who determined that the state *coram nobis* proceedings were entitled to no presumption of correctness under 28 U.S.C. § 2254 because relevant medical testimony was not fully developed. At the hearing petitioner was represented by appointed counsel.

reasons for his unarticulated objection to his assigned counsel. Appellant was allowed to proceed *pro se* without any explanation of the dangers of such a course.

By August of 1966, it was clear that state defendants had a right to counsel unless such right was "intelligently and understandingly" waived. *Carnley v. Cochran*, 369 U.S. 506, 516–17, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); *Johnson v. Zerbst*, 304 U.S. 458, 462–68, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). Moreover, the Supreme Court had just held in *Westbrook v. Arizona*, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429 (May 2, 1966), that a defendant was entitled to a separate hearing on his competency to "waive his constitutional right to the assistance of counsel and proceed . . . to conduct his own defense."[5] Both *Westbrook* and *Pate v. Robinson*, 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (March 7, 1966), left open the question of what remedy is to be afforded

where the trial judge was under no duty—as measured by the information before him at trial—to hold a competency hearing. We must agree with Judge Tyler that the information before the trial judge was not such as to require him to hold a hearing on the defendant's competency to waive counsel in advance of trial.

 This court recognized, however, as early as 1964 that a defendant has a constitutional right to represent himself. *United States v. Plattner*, 330 F.2d 271 (2 Cir. 1964). This circuit has struggled since then to define standards to guide trial judges in their difficult task of insuring that a defendant receives adequate representation by counsel of his choice, that a defendant does not abuse the right to counsel for purposes of disrupting or delaying the proceedings, and that if a defendant desires to proceed without counsel, his decision is made with a knowledge of the perils of a *pro se* defense.[6] As Judge Medina

---

**5.** In *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (March 7, 1966), Mr. Justice Clark stated flatly that the *per curiam* reversal in *Bishop v. United States*, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956), meant that "the conviction of an accused person while he is legally incompetent violates due process [citation omitted] and that state procedures must be adequate to protect this right." Mr. Justice Harlan, in dissent, thought that the "constitutional violation alleged is the failure to make an inquiry." 383 U.S. at 388 n.1, 86 S.Ct. at 843.

**6.** Defendants have a Sixth Amendment right to counsel of their own choosing, although the defendant's choice of counsel may not be manipulated in order to delay or interfere with the orderly processes of justice. *United States v. Arlen*, 252 F.2d 491, 494 (2 Cir. 1958). Factors that have, in other cases, been considered significant where defendants have been put to the choice of proceeding immediately with available counsel, or proceeding *pro se*, in determining whether the choice was constitutionally insisted upon and made, include: 1) the background, experience and education of the defendant, *United States v. Duty*, 447 F.2d 449 (2 Cir. 1971); 2) the amount of advance warning defendant had of his trial date, *United States v. Maxey*, 498 F.2d 474 (2 Cir. 1974); *United States v. Rosenthal*, 470 F.2d 837 (2 Cir. 1972), *cert. denied*, 412 U.S. 909, 93 S.Ct.

2298, 36 L.Ed.2d 975 (1973); 3) whether the request to change counsel occurs before or during the trial, *Sawicki v. Johnson*, 475 F.2d 183 (6 Cir. 1973); *United States v. Calabro*, 467 F.2d 973, 985 (2 Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587, *reh'g denied*, 411 U.S. 941, 93 S.Ct. 1891, 36 L.Ed.2d 404 (1973); *United States v. Rosenthal, supra;* 4) the length of any previous delays occasioned by the defendant, *United States v. Maxey, supra;* 5) the quality and continuity of representation enjoyed by the defendant, compare *United States v. Tortora*, 464 F.2d 1202 (2 Cir.), *cert. denied*, 409 U.S. 93 S.Ct. 554, 34 L.Ed.2d 516 (1972), with *United States v. Harrison*, 451 F.2d 1013 (2 Cir. 1971); 6) the number of attorneys previously involved in the case, *Rastrom v. Robbins*, 440 F.2d 1251 (1 Cir.), *cert. denied*, 404 U.S. 863, 92 S.Ct. 53, 30 L.Ed.2d 107 (1971); and 7) the available attorney's opinion as to his or her preparedness *vel non*, compare *Rastrom v. Robbins, supra*, with *United States ex rel. Martinez v. Mancusi*, 455 F.2d 705 (2 Cir.), *cert. denied*, 409 U.S. 959, 93 S.Ct. 273, 34 L.Ed.2d 228, *reh'g denied*, 409 U.S. 1050, 93 S.Ct. 532, 34 L.Ed.2d 503 (1972). Of key significance, of course, is any evidence on the record that the waiver is voluntary, or that

"the defendant understood that he had a choice between proceeding *pro se* and with assigned counsel, . . . the defendant understood the advantages of having one

noted in *United States v. Plattner, supra,* 330 F.2d at 276, "[t]he right to counsel and the right to defend *pro se* in criminal cases form a single, inseparable bundle of rights, two faces of the same coin."

In *Plattner* we explained the general procedure to be followed in protecting the rights of defendants in federal criminal trials. We suggested, so far as is relevant to this appeal, that the presiding judge by recorded colloquy with the defendant ought to explain to him that he has the choice between defense by a lawyer and defense *pro se*; that he will be given a reasonable time to make the choice; that it is advisable to have a lawyer, because of his special skill and training in the law, and that the judge believes it is in the best interests of the defendant to have a lawyer; but that he may, if he elects to do so, waive his right to a lawyer and conduct and manage his defense himself. While due process does not require this precise formulation, or its use in every case, we think that when the judge has reason to believe that a defendant's decision to represent himself may have been the result of a refusal to grant a continuance to allow him to get new counsel in place of one whom he discharged, the judge is constitutionally bound to make some inquiry into the circumstances, unless he is already fully aware of them. *See United States ex rel. Maldonado v. Denno,* 348 F.2d 12, 16 (2 Cir. 1965), *cert. denied,* 384 U.S. 1007, 86 S.Ct. 1950, 16 L.Ed.2d 1020 (1966); and compare *United States ex rel. Higgins v. Fay,* 364 F.2d 219, 223 (2 Cir. 1966).

Obviously not every request for an adjournment to seek new counsel need be granted, as a denial is normally within the proper exercise of the court's discretion. See *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). "Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag,* 348 U.S. 3, 75 S.Ct. 1, 99 L.Ed. 4." *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). Each case must turn on its own facts; of key significance here were the defendant's educational and social background, his mental history, his real justifications for lack of confidence in his assigned counsel, and the timing of his request, which was made as soon as the defendant became aware of his trial date. Compare *United States v. Duty,* 447 F.2d 449 (2 Cir. 1971); *United States v. Harrison,* 451 F.2d 1013 (2 Cir. 1971); *United States v. Calabro,* 467 F.2d 973, 985 (2 Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587, *reh'g denied,* 411 U.S. 941, 93 S.Ct. 1891, 36 L.Ed.2d 404 (1973); *United States v. Maxey,* 498 F.2d 474 (2 Cir. 1974). Moreover, appellant had been incarcerated since his arrest and had nothing to gain from further delay. Cf. *United States ex rel. Cole v. Follette,* 301 F.Supp. 1137 (S.D.N.Y.1969), *aff'd,* 421 F.2d 952 (2 Cir. 1970).

Taken by itself, the denial of an adjournment even under these circumstances might not require the granting of a writ. However, the result of this denial was that Martinez defended himself—reluctantly, unwillingly [7] and greatly to his detriment. See *United States ex rel. Davis v. McMann,* 386 F.2d 611 (2 Cir. 1967), *cert. denied,* 390 U.S. 958, 88 S.Ct. 1049, 19 L.Ed.2d 1153 (1968).

We cannot escape the conclusion on this record that appellant was given

---

trained in the law to represent him, and . . . the defendant had the capacity to make an intelligent choice."
*United States v. Spencer,* 439 F.2d 1047, 1050 (2 Cir. 1971). Accord, *United States v. Calabro, supra,* at 985.

7. Throughout the trial, Martinez renewed his request to have private counsel represent him.

These facts are directly contrary to those in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), in which the Supreme Court held that while there is a constitutional right to represent oneself in criminal cases, the decision to waive counsel must still be made " 'knowingly and intelligently.' " 422 U.S. at 835, 95 S.Ct. at 2541.

no freedom of choice to decide whether he wished to defend himself. His choice, if choice it can be called, was based entirely on his bowing to the inevitable, by the agreement to a trial date by an institutional defense team whose lack of liaison was prejudicial to his interests, and by his distrust of the lawyer assigned. We cannot find that in the light of his borderline competence and the failure to warn him of the pitfalls of a *pro se* defense, the high standards of proof for the waiver of constitutional rights have been met. *Johnson v. Zerbst, supra.*

We need not consider separately each of the alleged inadequacies in the treatment afforded Martinez. In combination they spell a violation of due process. Though the probable incompetence of the defendant was not made known to the presiding judge, we cannot agree that a person in his mental condition is likely to have made an intelligent waiver of the right to counsel. See *Cooper v. Griffin,* 455 F.2d 1142 (5 Cir. 1972) (borderline I.Q.'s in the 60's require strict scrutiny on waiver of constitutional rights). We need not go so far as *Cooper.* For if we assume a greater comprehension than his psychiatric record indicates, he nevertheless was given no warning of the inadequacy of self-representation. No inquiry was made of his reasons for dissatisfaction with counsel. No inquiry was made of the reasons for the many adjournments, of how much access the defendant had to his counsel, or of the circumstances under which the case was marked ready for trial. No inquiry was made of why his assigned counsel was protesting his unreadiness.

Any inquiry would have disclosed the month-long vacation in July, just before trial.

We believe that though our distinguished former colleague Judge Tyler below was right in thinking that the case involved "difficult issues," the combination of circumstances weigh on the side of lack of due process. We do not express the view that if each of the circumstances related stood alone, we would necessarily be inclined to reverse the denial of the writ.[8] We base our conclusion only on the totality and the relationship *inter se* of all the circumstances, including the circumstance that no attempt was made by the trial judge to grant a new trial when he discovered before sentence that the defendant who had been permitted to waive his right to counsel had a long history of mental disease.

We therefore direct the granting of the writ unless the State puts the defendant on trial within 30 days under procedures in conformity with this opinion. We note that if any of the alleged parole violations were also allegedly state crimes, the appellant may be proceeded against in conformity with the safeguards mentioned in this opinion. But nothing herein shall limit the power of the State to seek commitment of the appellant on statutory grounds relating to mental illness.

The judgment of the district court is reversed and the case is remanded for entry of an order in conformity with this opinion.

**8.** Cf. *United States ex rel. Konigsberg v. Vincent,* 526 F.2d 131 (2 Cir.), decided November 3, 1975. There Konigsberg asserted his right to proceed *pro se* after the trial had gone 12 days for what were obviously reasons of disruption. The issue was no longer waiver of his right to counsel, for he had accepted counsel. As we said there " . . . where a defendant is vehemently asserting his right of self-representation [it] is not truly a case of waiver of a constitutional right; it is a decision to assert one constitutional right instead of another." 526 F.2d at 133–34.

In the present case, however, no fair choice was afforded Martinez to "waive" his right to counsel. As we have seen, his self-representation was forced upon him under the circumstances.