**Thomas McKEE, Petitioner,**

v.

**David R. HARRIS, Superintendent, Green Haven Correctional Facility, Respondent.**

**Civ. No. 79–1675 (RWS).**

United States District Court,
S. D. New York.

Feb. 21, 1980.

Thomas McKee, Green Haven Correctional Facility, Pro Se.

Robert Abrams, Atty. Gen. of the State of New York, New York City by Tyrone Mark Powell, Asst. Atty. Gen., New York City, for respondent.

## OPINION

SWEET, District Judge.

Petitioner Thomas McKee was convicted in state court of criminal sale of a con-trolled substance on May 5, 1976, and is currently serving a sentence of seven years to life at the Green Haven Correctional Facility. He seeks habeas corpus relief for alleged deprivations of his sixth amendment right to counsel and for other wrongs including allegedly improper cross-examination, failure to reinstruct the jury as requested and forced waiver of agency and entrapment defenses. Magistrate Kent Sinclair, Jr., has reviewed these claims, and by a report dated January 28, 1980, recommends that the petition be granted because the petitioner was denied his right to effective counsel.

### A. The Background

After the process of selecting a jury had commenced, petitioner informed the Honorable Dorothy Cropper that he did not want his court-appointed attorney, Richard Ochetti, to continue to represent him. The stated reason was that Ochetti thought McKee to be guilty (Tr. 54, 60) and to have little chance of acquittal. (Tr. 61). When asked repeatedly by Justice Cropper whether he wanted to represent himself, petitioner stated that he did not, and that he wanted the court to assign him another lawyer (Tr. 55). After discussion, he was given the options of 1) representing himself; 2) retaining a lawyer; 3) proceeding to trial with Mr. Ochetti as counsel; 4) proceeding to trial pro se with the assistance of a legal advisor (Tr. 66).

Petitioner chose the fourth option, but stated his preference to have an attorney assigned to represent him. (Tr. 75–76). Elmer Ferber, an attorney, was assigned to act as McKee's advisor, and Ochetti was asked to remain in the courtroom throughout the trial to make himself available to Ferber. (Tr. 66–67). The petitioner asked if the court would assign Ferber to represent him, but Ferber felt that another commitment prevented him from preparing the case for trial over the weekend. (Tr. 78–79).

With the consent of McKee, Ochetti completed the selection of the jury. Justice Cropper asked the petitioner the following

Monday if he wanted to reconsider his choice (Tr. II, 3) and reminded him of the serious nature of the charges involved (Tr. II, 4). McKee remained adamant, however, that he did not want Ochetti to represent him. As a consequence, the court allowed petitioner to conduct his own defense, and instructed the legal advisor to provide his assistance to the petitioner only when it was specifically requested (Tr. II, 25–26).

The claims raised by petitioner in his petition and "traverse" are 1) he was denied a fair trial because the court did not permit him to voice his reasons for his dissatisfaction with appointed counsel; 2) his discharge of appointed counsel did not constitute a waiver of counsel because he informed the court both that he had no confidence in his attorney and that he did not want to proceed pro se; 3) his "waiver" was not scrutinized by the court to determine its voluntariness; 4) he was denied a fair trial when the court refused to appoint new counsel after petitioner discharged Ochetti; 5) the court's reappointment of Ochetti to finish jury selection implicitly acknowledged petitioner's need for representation; 6) he was denied the right to effective counsel when a court officer refused to permit his legal advisor to approach petitioner while he was being cross-examined on the witness stand; 7) he was denied a fair trial by the government's cross-examination of petitioner on the subject of the persons with whom he was arrested on a federal conspiracy charge; 8) he was denied a fair trial by the court's refusal to repeat the portion of the charge on "sale" and "possession," and 9) he was wrongfully forced to waive his defenses of agency and entrapment.

In his report, Magistrate Sinclair described at length the post-trial avenues McKee pursued through appeal and collateral attack to obtain relief in state court. This court agrees with and adopts the conclusion of the magistrate that petitioner has adequately exhausted the available state court remedies as to all of these claims. It declines, however, to adopt the recommendation of the magistrate that habeas relief be granted because of a denial of petitioner's right to effective assistance of counsel.

### B. Denial of Sixth Amendment Right to Counsel

A criminal defendant has two constitutionally guaranteed options with respect to his representation at trial. He has sixth amendment right to be represented by counsel, *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and the same constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). It has been said that the assistance of counsel and the right to defend *pro se* "form a single, inseparable bundle of rights, two faces of the same coin." *United States v. Plattner*, 330 F.2d 271, 276 (2d Cir. 1964).

It is important to note that a criminal defendant does not have an unqualified right to be represented by the counsel he chooses, *see United States v. Ostrer*, 597 F.2d 337, 341 (2d Cir. 1979), nor to discharge his lawyer at any time he chooses and represent himself. *See United States v. Malizia*, 437 F.Supp. 952, 955 (S.D.N.Y.1977), *aff'd*, 573 F.2d 1298 (2d Cir. 1978). The sixth amendment does not give a criminal defendant license to manipulate his choice of attorney "in order to delay or interfere with the orderly processes of justice." *United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 754 n. 6 (2d Cir. 1975). Consequently, the interplay of defendant's sixth amendment rights must be carefully considered, keeping in mind their effect on the efficient functioning of the criminal justice system.

Once a trial has begun, a defendant does not have an unbridled right to reject assigned counsel and demand another. *United States v. Calabro*, 467 F.2d 973, 986 (2d Cir. 1972), *cert. denied*, 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). *See also Ennis v. LeFevre*, 424 F.Supp. 14 (E.D.N.Y.1976), *aff'd on other grounds*, 560 F.2d 1072 (2d Cir. 1977), *cert. denied*, 435 U.S. 976, 98 S.Ct. 1625, 56 L.Ed.2d 70 (1978).

"In order to warrant a substitution of counsel during the trial, the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Calabro*, 467 F.2d at 986. If a court refuses to inquire into a seemingly substantial complaint about counsel when he has no reason to suspect the bona fides of the defendant, the defendant may properly claim denial of his sixth amendment right. *Id.*

In this case, McKee indicated to the court on the second day of jury selection that he no longer wanted Ochetti to represent him because Ochetti thought he was guilty and that his chances of success were slim (Tr. 54, 60–61). There was no additional claim that he believed Ochetti would provide him with ineffective legal assistance, and indeed, Justice Cropper noted that she found him to be competent and qualified to represent the petitioner (Tr. II, 4). There was no indication of a complete breakdown of communication[1] or any potential conflict of interest.

■ In his petition and accompanying papers McKee argues that he had "good cause" for requesting different counsel but was barred from stating his "real reason." His petition indicates that the real reason for making the request was that he lacked confidence in his attorney. He correctly notes that when considering a request for new counsel, lack of confidence in present counsel is a factor that may be considered where there is real justification for such a feeling. *See United States ex rel. Martinez v. Thomas*, 526 F.2d 750, 755 (2d Cir. 1975).

McKee has still not stated the basis for this lack of confidence. It is noteworthy that the issue was not raised prior to the commencement of jury selection, particular-ly since Ochetti had represented McKee from the beginning of this action and had also represented him in another matter. In addition, a review of the record does not indicate that petitioner was "barred" in any sense from stating his feelings on this subject. While it would have been preferable for the trial judge to have formally inquired into the reasons for the petitioner's request, she was not completely unjustified in believing that he had already stated them. The record reflects that petitioner had no difficulty making his views known,[2] at times to the exclusion of adhering to the court's directions.

■ Moreover, the failure to provide McKee with new counsel does constitute a denial of his sixth amendment rights on this record. At worst, this alleged feeling of lack of confidence seems to have come from the assertion that Ochetti told defendant that he believed McKee was guilty and that his chances of success were slim. The mere fact that appointed counsel makes such statements simply cannot constitute "good cause" for requesting new counsel. If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.

■ The conclusion that McKee did not state a "good cause" for substitution of counsel does not end the analysis. The next question is whether petitioner was correctly permitted to proceed pro se. As Magistrate Sinclair noted, a defendant proceeding pro se must knowingly, intelligently and voluntarily waive the benefits of counsel. He should "be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. at 835, 95 S.Ct. at 2541, *quoting*

---

1. It is true that the request for new counsel put a strain on the attorney-client relationship of petitioner and Ochetti. However, to find that this alone amounts to a breakdown in communication that justifies appointment of new counsel after the commencement of a trial grants the unrestrained power to the defendant to discontinue the trial.

2. This lack of reticence also rebuts McKee's contention that he did not voluntarily waive his right to counsel because he acted out of "shock, fear and confusion." The record reflects that petitioner was unafraid and spoke freely, even after the trial judge threatened to have him removed for his behavior (Tr. 61–63).

*Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942). *See also Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1024–1025, 82 L.Ed. 1461 (1938); *United States v. Calabro*, 467 F.2d at 935. In making this determination, some of the factors to be considered are 1) the understanding of the defendant that he had a choice of either proceeding *pro se* or being represented by counsel; 2) his realization of the advantages of being represented by a lawyer; and 3) his educational background and capacity to make an intelligent choice. *United States ex rel. Martinez v. Thomas*, 526 F.2d at 755; *United States v. Calabro*, 467 F.2d at 985; *United States v. Spencer*, 439 F.2d 1047, 1050 (2d Cir. 1971). *See also Cordoba v. Harris*, 473 F.Supp. 632, 637–38 (S.D.N.Y.1979).

Magistrate Sinclair found that while defendant was apparently aware of some of the dangers of proceeding pro se, he was not adequately informed by the court of the charges against him, the possible punishments or the available defenses. While this court agrees that the trial judge could have done more to insure that petitioner was acting with "eyes open," a review of the record reveals that McKee was, in fact, fully apprised of the dangers of self-representation.

The record shows that McKee was "literate, competent and understanding." *See Faretta v. California*, 422 U.S. at 835, 95 S.Ct. at 2541. His initial statements about not wanting to proceed pro se indicate that he was fully aware of the dangers of that course.[3] His statements also reflect that he was well aware of the seriousness of the charges against him, and that he knew of the accompanying life sentence it carried.[4]

Justice Cropper also gave McKee certain critical information bearing on his decision to represent himself. She explained to him that a trial as complicated as his was a very serious matter and that it was also a serious matter to represent oneself, particularly

where there were severe mandatory sentences (Tr. II, 3–4). She informed him of the charges against him (Tr. 69) and of the nature of the defense of agency that Ochetti had planned to assert (Tr. II, 5). She had the district attorney describe the plea offer made to McKee (Tr. II, 5). Finally, she asked petitioner on at least two occasions after he first discharged Ochetti whether he wanted to continue pro se (Tr. 75, Tr. II, 4).

Taken together, the record reveals that McKee proceeded to represent himself knowingly, intelligently, and with full understanding of the risks. He argues, however, that his decision was not "voluntary" because he clearly did not want to proceed pro se, and did so only because "he felt 'he had no choice.' " *United States v. Calabro*, 467 F.2d at 985.

Given the fact that there was no "good cause" for appointment of new counsel, Justice Cropper correctly presented petitioner with the only choices available to him. "The fact that he wished a third choice— representation by an attorney other than [the one assigned]—does not render ineffective the choice he made." *United States ex rel. Torry v. Rockefeller*, 361 F.Supp. 422, 427 (W.D.N.Y.1973). *See also, Fillipini v. Ristaino*, 585 F.2d 1163, 1167 (1st Cir. 1978). "[T]he requirement that a waiver of counsel be voluntary 'does not mean that the decision must be entirely unrestrained. A criminal defendant may be asked, in the interest of orderly procedures, to choose between waiver and another course of action as long as the choice presented to him is not constitutionally offensive.' " *United States v. Davis*, 604 F.2d 474, 483 (7th Cir. 1979), *quoting, Maynard v. Meachum*, 545 F.2d 273, 278 (1st Cir. 1976). Indeed, if after having been presented with his choices McKee had refused to either proceed with appointed counsel or proceed pro se, the continuation of his trial would not have constituted a denial of his constitutional

---

**3.** When initially asked if he wanted to represent himself, petitioner responded "I am not a fool (Tr. 55)." Later he responded, "No, not me. Am I a lawyer? Have I been to any law school? I am not a crazy person."

**4.** Early in the colloquy, petitioner stated, "I understand what I am facing. I am facing fifteen years to life. . . . (Tr. 58)."

rights. *See United States ex rel. Testamark v. Vincent,* 496 F.2d 641, 643 (2d Cir. 1974), *cert. denied,* 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105 (1975).

 Having concluded then, that McKee was informed of the options to which he was entitled, and that he knowingly and intelligently chose to proceed pro se, this court cannot say that petitioner was denied his sixth amendment right to counsel. Indeed, if Justice Cropper had denied McKee's request to discharge Ochetti and proceed pro se, the petitioner may have successfully claimed that counsel was forced upon him and that he was denied his right to proceed pro se. *See Faretta v. California,* 422 U.S. at 833–34, 95 S.Ct. at 2540–2541.

Furthermore, McKee was not denied his right to counsel by the alleged action of a court official barring petitioner's legal advisor from approaching the witness stand during petitioner's cross-examination. In accordance with the Second Circuit's suggestion that pro se criminal defendants be provided with attorneys who can serve as legal advisors, *United States v. Spencer,* 439 F.2d at 1051, McKee was provided with such an advisor, and the record reveals that McKee conferred frequently with him. The court had clearly advised McKee that he must request the assistance of the advisor in order to utilize him, and there is no evidence on the record that he made such a request while being cross-examined. McKee's attempt at this date to claim that he did not make such a request because of his fear of being "wired up" is without support in the record, which reveals that McKee was uninhibited about making requests and objections when he felt it necessary.[5]

### C. *Other Claims*

For substantially the reasons stated in Magistrate Sinclair's report, petitioner's remaining claims are found not to constitute grounds for habeas relief. McKee's petition for a writ of habeas is therefore denied in all respects.

IT IS SO ORDERED.

---

5. The reference to "wire up" which allegedly caused petitioner's fear does not appear to refer to what should be done to the prisoner, but rather to arrangements for listening to the trial while outside the courtroom (Tr. 62). Moreover, McKee's response to that comment was hardly meek or restrained (Tr. 63), and the inhibiting effect of that conversation is doubtful in light of the fact that it occurred several days before his cross-examination.