JOURNAL ENTRY AND OPINION
Defendant-appellant William Inglesias-Rodriquez appeals from his convictions following a plea agreement for murder (R.C.2903.02), aggravated robbery (R.C. 2911.01), and four counts of felonious assault (R.C. 2903.11), each with firearm specifications. Defendant contends the trial court erred in not allowing him to withdraw his guilty pleas prior to sentencing; in imposing consecutive sentences for allied offenses; for failing to remove his appointed counsel and appoint new counsel; and for failing to authorize psychiatric evaluation on competency to stand trial. We find no error and affirm.
At approximately 7:00 p.m. on May 21, 1998, Angel Montanez was operating a motor vehicle near the corner of Scranton and Beyerle Roads in Cleveland accompanied by his wife, Dawn Coleman, and their two children. Dawn was in the front passenger seat and the children were located in the rear seat. As Montanez proceeded on Scranton Road, he was flagged down by Charles B. Coleman and Raoul Sanchez. Montanez pulled into a driveway at 3261 Scranton Road and began conversing with Coleman and Sanchez. Defendant approached the open driver's window and asked Montanez if he could borrow $20. Defendant and Montanez were friends who had known one another for a number of years. After Montanez refused defendant's request, defendant pulled out a nine millimeter pistol and fired two shots into the vehicle. One shot hit Montanez below the left shoulder, a second shot passed through his neck and grazed Dawn Coleman's right leg. Coleman and Sanchez began to flee and defendant fired one or two shots in their general direction. At least one of the bullets ricocheted off the sidewalk cement or surrounding ground and tract; part of a slug penetrated Coleman's bicycle tire and the partial slug was found on the porch at 3261 Scranton Road. Twenty minutes later, defendant arrived at the home of Charles and Ruby Coleman at 3531 Beyerle. They are the parents of Dawn Coleman and they also had been friends of the defendant. The defendant again asked to borrow money. When Ruby Coleman denied his request, defendant shot at Charles Coleman putting a hole in the kitchen cabinet next to where Coleman was standing. Defendant subsequently fled the Coleman residence and was soon apprehended by the police.
Defendant was indicted by the Grand Jury on June 1, 1998. He was charged with aggravated murder with capital and firearm specifications; four counts of attempted murder with firearm specifications; aggravated robbery with firearm specifications; failure to comply with the order or signal of a police officer; and discharging a firearm into a habitation.
On November 30, 1998, in the midst of jury selection, defendant entered into a plea agreement with the State. He pled guilty to murder with a firearm specification; four counts of felonious assault with firearm specifications; and aggravated robbery with a firearm specification. The rest of the charges were nolled.
On December 17, 1998, defendant filed a pro se motion to withdraw his plea pursuant to Crim.R. 32.1. On January 8, 1999, a hearing was held on that motion and the trial court denied same. Defendant also filed a motion requesting that the various firearm specifications be merged. That motion was heard at the time of sentencing.
Following a stipulation to the facts, the trial court merged the firearm specification on the murder of Montanez with the firearm specification on the felonious assault of Dawn Coleman. The trial court also merged the firearm specifications on the felonious assault counts regarding Sanchez and Coleman. The trial court, however, refused to merge the firearm specifications regarding the felonious assault on Dawn Coleman's father and aggravated robbery of Dawn Coleman's mother. The net effect led to defendant being sentenced on four separate firearm specifications.
On Count 1, the court sentenced defendant to fifteen years to life, consecutive to a three-year term for the firearm specification on the murder count. On Count 2, the felonious assault of Dawn Coleman, the defendant was sentenced to five years consecutive to a three-year firearm specification. The trial court ordered Counts 1 and 2 to be served concurrently. On Counts 3 and 4, the felonious assaults of Raul Sanchez and Charles B. Coleman, the defendant was sentenced on each to six years consecutive to a three-year firearm specification. Counts 3 and 4 were ordered to be served concurrently, but consecutive to Counts 1 and 2. On Count 5, the felonious assault on Charles Coleman (Dawn and Charles Coleman's father), the defendant was sentenced to six years to be served consecutive with a three-year firearm specification. Count 5 was ordered to be served consecutively with all other counts. On Count 8, the aggravated robbery of Ruby Coleman, the defendant was sentenced to three years to be served consecutively to a three-year firearm specification. The three years for the aggravated robbery was to be served concurrently with all other counts. Defendant's net sentence totaled 39 years to life. A timely appeal ensued.
We will address defendant's assignments of error in the order presented.
 I. THE COURT ABUSED IT'S [SIC] DISCRETION WHEN IT WOULD NOT ALLOW DEFENDANT TO WITHDRAW HIS GUILTY PLEA PRIOR TO SENTENCING AND EXERCISE HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL.
Defendant claims that the trial court erred in not allowing him to withdraw his guilty plea prior to sentencing pursuant to hispro se motion. The trial court held a hearing and the motion was then denied on the grounds that defendant provided no legitimate basis to allow him to withdraw the plea.
Crim.R. 32.1 provides in pertinent part, as follows:
 A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.
The general rule is that "a presentence motion to withdraw a guilty plea should be freely and liberally granted." State v. Xie
(1992), 62 Ohio St.3d 521, 527. However, it is well established that "[a] defendant does not have an absolute right to withdraw a guilty plea prior to sentencing. A trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." Id. at paragraph one of the syllabus. "The decision to grant or deny a presentence motion to withdraw a guilty plea is within the sound discretion of the trial court." Id. at paragraph two of the syllabus. Absent an abuse of discretion, the trial court decision must be affirmed.Id. at 527. An abuse of discretion is more than an error of law or judgment, "we must find that the trial court's ruling was "unreasonable, arbitrary or unconscionable.'" Id. at 527, quotingState v. Adams (1980), 62 Ohio St.2d 151, 157.
This Court in State v. Petersiem (1980), 68 Ohio App.2d 211, paragraph three of the syllabus, held that:
 A trial court does not abuse its discretion in overruling a motion to withdraw the plea: (1) where the accused is represented by highly competent counsel, (2) where the accused was offered a full hearing, pursuant to Crim.R. 11, before he entered the plea, (3) when, after the motion to withdraw is filed, the accused is given a complete and impartial hearing on the motion, and (4) where the record reveals that the court gave full and fair consideration to the plea withdrawal request.
In the case at bar, a lengthy hearing was held regarding defendant's motion to withdraw his guilty pleas. Defendant claimed that his attorneys talked him into pleading guilty by playing on his emotional state. Defendant believed that he would have been convicted of a lesser offense had he gone to trial on the basis of the defense expert's opinions regarding his alcoholic intoxication at the time of the murder as well as the expert's ballistics' opinions. (Tr. at 274). Defendant agreed with the court that all of these matters were known to him prior to entering his guilty pleas. (Tr. at 276). The court found that these issues had been pursued diligently by defense counsel and that defendant had the opportunity to consider all of this information prior to entering his guilty pleas. This was not a new matter. (Tr. at 279-280) Defendant agreed that this was information all available to him prior to entering his guilty pleas. (Tr. at 295).
The trial court indicated that it had reviewed the transcript of the plea hearing. The transcript was over fifty pages long and contains numerous instances of the court stopping and inquiring of defendant to whether he understood and wanted to go through with the plea. Defendant admitted that at no point did he stop and say that he did not understand. Defendant claimed at the motion to withdraw hearing that he had not been thinking straight at the time of the plea, but the transcript of the plea hearing shows that he assured the court at every turn that he was thinking straight. Defendant also claimed that his lawyers misled him into pleading guilty, but could not point to a specific instance of their having misled him. During the course of the plea hearing he had indicated that he was satisfied with his attorneys. The record from the plea hearing states as follows:
 COURT: Now I know that you had some skepticism and misgivings and difficulties with counsel along the way.
 What I need to know from you today was, whether on the whole, are you satisfied with your lawyers Mr. Grant and Mr. Dixon?
DEFENDANT: Yes, your Honor.
 COURT: Do you have any reservation or problem or criticisms of the way the Court, meaning me, dealt with your challenge to whether — for example, Mr. Grant should stay on the case?
DEFENDANT: Well, I gave my point. I guess it wasn't meant.
 COURT: Well, here's why I'm asking you that; if you want for [sic] plead guilty here today I would like to hear from you that you are not pleading guilty because of the decision the Court made to keep Mr. Grant on our case.
DEFENDANT: No.
 COURT: Because I kept Mr. Grant on the case you didn't feel that you were — because of that reason alone necessarily going to lose at trial?
DEFENDANT: No.
 COURT: Okay. So it's true then that on the whole you've basically received, what was to you, good legal representation?
DEFENDANT: Yes, your Honor.
COURT: Okay.
DEFENDANT: Yeah. I'm happy with them.
COURT: Do you have any complaints about them?
DEFENDANT: None.
 COURT: You know why I'm asking you that, because these are all things to get out in the air now, not down the road.
DEFENDANT: Yes.
 COURT: Down the road we can't repair the damage, so if there's a problem I want to hear about it today. Understood?
DEFENDANT: Yes.
(Tr. at 225-227). The trial court did not accept the plea until it was clear that defendant was satisfied with his representation.
Following the lengthy hearing, the trial court denied the motion stating that defendant had raised nothing except second thoughts about his pleas. There was no indication that he had received bad advice, had been tricked or misled, had not been thinking clearly, or had not understood what was going on. According to the trial court's findings, he had simply changed his mind. (Tr. at 304-05). Under these circumstances, we find the trial court correctly found that there was an insufficient basis under the law to allow the pleas to be withdrawn. A mere change of heart is insufficient justification to withdraw a guilty plea, even prior to sentence. State v. Drake (1991), 73 Ohio App.3d 640,645; State v. Ankerton (Sept. 23, 1999), Cuyahoga App. No. 75906/75907, unreported. "It may be assumed that all defendants faced with a criminal trial, with the risk of convictions on multiple counts and longer sentences are under pressure' or feel the coercion of the justice system. But, that cannot be reason enough to allow withdrawal of the plea." State v. Abedlah (July 31, 1997), Cuyahoga App. No. 71136, unreported. We find no abuse of discretion in the court's ruling.
Assignment of Error I is overruled.
 II. THE TRIAL COURT ERRED BY IMPOSING CONSECUTIVE SENTENCES FOR ALLIED OFFENSES IN VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE U.S. CONSTITUTION, WHEN IT REFUSED TO MERGE FIREARM SPECIFICATIONS.
Defendant claims that the trial court erred in not merging all of the various firearm specifications into one. We find no merit to this claim.
R.C. 2929.14(D)(1)(a)(i) of the Ohio Revised Code provides in relevant part:
 * * * A court shall not impose more than one additional prison term on an offender under this division for felonies committed as part of the same act or transaction.
The language "same act or transaction" mirrors the wording in the repealed R.C. 2929.71. The Ohio Supreme Court in State v.Wills (1994), 69 Ohio St.3d 690, 691 defined the word "transaction" as it was used in the prior code section:
 This Court has never defined the word transaction as it is used in R.C. 2929.71(B). To do so, we adopt the test used by the Court of Appeals for Summit County, which defined transactions as "a series of continuous acts bound together by time, space, and purpose and directed towards a single objective." State v. Caldwell (Dec. 4, 1991), Summit App. No. 14720, unreported at 26-27, 1991 WL 259529.
Applying the Wills analysis, the evidence must be reviewed to determine whether the defendant's actions were part of a series of continuous acts bound together by time, space and purpose and directed towards a single objective.
The trial court merged the firearm specifications in Count 1 and 2 (murder and felonious assault), finding that when defendant shot into the car killing Angel Montanez and wounding his wife, Dawn Coleman, it was a single act or transaction. The trial court further found that when defendant turned and fired multiple shots in the direction of the fleeing witnesses to the first shooting (Sanchez and Charles Coleman), he did so with a separate objective and therefore would not merge these counts with Counts 1 and 2. The trial court, however, merged the specifications in Counts 3 and 4, both for felonious assault, relating to these two victims, but did not merge them with those from Counts 1 and 2. This was proper because it appears defendant had a different purpose in shooting at Sanchez and Charles Coleman than he had in shooting Montanez and Dawn Coleman.
Following the shootings on Scranton Road, defendant broke off and went to the home of Ruby and Charles Coleman on Beyerle Road. He arrived there approximately twenty minutes after the first shootings. Brandishing the gun, he demanded money from Ruby Coleman. Upon refusal, he fired a shot in the direction of Charles Coleman, narrowly missing him. The criminal acts toward the two victims on Beyerle at the Coleman home were clearly separated from those on Scranton Road by time and space, and from each other by different objectives. Since defendant had different objectives when he committed the aggravated robbery upon Ruby Coleman and the felonious assault on Charles Coleman on Beyerle, the firearm specifications were not subject to merger.
Defendant cites case law pertaining to allied offenses, however, that case law does not apply to the specification issues. The firearm specifications are not offenses in and of themselves; they are specifications attached to various offenses that enhance the penalty. State v. Blankenship (1995), 102 Ohio App.3d 534,547; State v. Whittsette (Feb. 13, 1997), Cuyahoga App. No. 70091, unreported. The single act or transaction analysis is the appropriate test for this issue. State v. White
(1991), 71 Ohio App.3d 550, 554.
Assignment of Error II is overruled.
 III. MR. WILLIAM-INGLESIAS' RIGHTS UNDER ARTICLE I, SECTION 16
OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE COURT DENIED THE MOTION TO REMOVE HIS INDIGENT COUNSEL BASED ON INEFFECTIVE ASSISTANCE, REFUSED TO APPOINT NEW COUNSEL AND FAILED TO ADVISE HIM THAT HE COULD PROCEED WITH CURRENT COUNSEL OR REPRESENT HIMSELF AS PERMITTED BY THE SIXTH AMENDMENT.
Defendant claims that his attorney(s) should have been removed at his request; that the trial court should have appointed new counsel; and that he should have been advised that he could represent himself. These claims are without merit.
Regarding the defendant's claim that the trial court erred in not permitting him to proceed to represent himself pro se, we find no error. A review of the record indicates that on September 28, 1998, the trial court held a hearing regarding defendant's motion to restrain certain parties from speaking with him about the case. At this hearing, the defendant indicated that he wanted one of his two appointed attorneys, Mr. Grant, replaced. He claimed that he did not get "good vibes" regarding Mr. Grant's representation of him, but could not pin point an exact reason. When pressed by the court to give a specific reason, the defendant expressed concerns about a witness interview that he felt was deficient. Upon the court's exploring his concern, the defendant acknowledged that his complaint was really against the appointed investigator and not his attorney. After a considerable amount of time was spent by the court to determine other reasons for the defendant's wanting Mr. Grant replaced, the court suggested that the defendant gather his thoughts and revisit the issue in a few days.
On October 1, 1998, another hearing was held to discuss the removal of Mr. Grant. At this hearing, the defendant presented the court with a two-page letter which the court treated as a motion. In the letter, the defendant admitted that Mr. Grant had presented well-written motions. The defendant, however, felt that his counsel did not listen to defendant's suggestions and that counsel believed defendant was guilty. Nothing in this letter indicated that the defendant wanted to represent himself. In fact, he suggested two other specific public defenders that he wanted to take the place of Mr. Grant. The trial court denied the defendant's motion because he did not set forth good cause for replacing Mr. Grant. In light of this ruling, the defendant then requested to be allowed to represent himself. The court stated that the defendant should file a written motion to that effect. The defendant never followed through with filing a written motion.
Based on this state of the record, we cannot say the trial court erred in denying the defendant's request to represent himself. The trial court requested that the request to waive counsel be made in the form of a written motion. Crim.R. 44(C) requires that in "serious offense cases the waiver shall be in writing." In the case herein, the defendant was facing the possibility of receiving the death penalty and therefore his waiver of counsel had to be submitted in writing. Defendant abandoned his request to represent himself by failing to file a written motion.
Furthermore, at the guilty plea hearing, in response to the trial court's extensive questioning regarding the defendant's prior request to remove his appointed counsel, the defendant contended he was happy with his attorneys' representation and had no complaints, regardless of his prior request. It appears that defendant's request to represent himself was nothing more than a brief expression of frustration because the court would not remove his counsel.
We also find the trial court did not err in not replacing Mr. Grant. As the Ohio Supreme Court in State v. Cowans (1999),87 Ohio St.3d 68, 72 held:
 "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause' to warrant substitution of counsel." United States v. Iles (C.A. 6, 1990), 906 F.2d 1122, 1130. "[T]he trial judge may * * * [deny the requested substitution and] require the trial to proceed with assigned counsel participating if the complaint * * * is unreasonable." State v. Deal (1989), 17 Ohio St.2d 17, syllabus. The trial court's decision is reviewed under an abuse-of-discretion standard. Iles, 906 F.2d at 1130, fn. 8.
 Cowan's chief complaint was that his attorneys thought he was guilty. However, counsel deny ever expressing such a belief to Cowans. Even if counsel had explored plea options based on a belief that Cowans might be guilty, counsel's belief in their client's guilt is not good cause for substitution. "`A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has not duty to be optimistic when the facts do not warrant optimism. Brown v. United States (C.A.D.C. 1959), 264 F.2d 363, 369 (en banc), quoted in McKee v. Harris (C.A.2, 1981), 649 F.2d 927, 932. "`If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" McKee, 649 F.2d at 932. quoting McKee v. Harris
(S.D.N.Y. 1980), 485 F. Supp. 866, 869.
In the case herein, the defendant did not set forth good cause for replacing counsel. When questioned by the court for specific instances of why he wanted counsel replaced, defendant merely stated that he did not get "good vibes" and in his motion argued that his attorney thought he was guilty and did not listen to his suggestions. As stated by the court in State v. Cowans, this is not enough to constitute good grounds for the removal of counsel.
Assignment of Error III is overruled.
 IV. MR. WILLIAM-INGLESIAS CONSTITUTIONAL RIGHTS TO DUE PROCESS AS GUARANTEED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED WHEN THE COURT DENIED THE EXPENSE OF A PRIVATE EVALUATION TO DETERMINE INDIGENT DEFENDANT'S COMPETENCY TO STAND TRIAL AND SANITY AT THE TIME OF THE OFFENSE.
Defendant claims that his due process rights were violated by the trial court's denial of his motions for independent psychiatric evaluations.
The Ohio Supreme Court in State v. Mason (1998), 82 Ohio St.3d 144, syllabus held:
 Due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial. (State v. Broom (1988), 40 Ohio St.3d 277, 533 N.E.2d 682, approved and followed.)
The record reveals that the defendant moved for two independent psychiatric evaluations. He motioned for an independent evaluation of his competency to stand trial and one to determine his competency at the time the acts were committed. The defendant argued in both motions that a private psychiatrist was necessary to have a neutral, unbiased evaluation. The trial court found no reason to believe that the court psychiatrist would be biased, but acknowledging the defendant's right to a private expert upon a showing of prejudice, the trial court ordered that the evaluations first be done by the court psychiatrist and that if the defendant was unhappy with the court psychiatrist's reports, that he could then move to be evaluated by a private psychiatrist. The court psychiatrist evaluated the defendant and found him to be competent to stand trial and found that defendant was competent at the time he committed the acts. The defendant's counsel stipulated to both of the court psychiatrists evaluations and no motion was made thereafter to have the defendant evaluated by a private psychiatrist.
Under these circumstances, where the trial court was open to further consideration of defendant's request for a private evaluation and defendant does not pursue it, we do not find the trial court erred in not permitting a private psychiatrist evaluation. The record is also devoid of any evidence that the court psychiatric evaluation was not trustworthy and that the defendant would have been denied a fair trial by not having an independent, private psychiatrist evaluate him.
Assignment of Error IV is overruled.
 V. MR. WILLIAM-INGLESIAS WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
Defendant claims that his counsel was ineffective. This claim is without merit.
In determining whether there has been ineffective assistance of counsel upon entry of a guilty plea, the Ohio Supreme Court inState v. Xie (1992), 62 Ohio St.3d 521, 524, citing Hill v.Lockhart (1985), 474 U.S., held:
 "First, the defendant must show that counsel's performance was deficient * * * Second, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty * * *."
In Xie, the Court of Appeals reversed the trial court's refusal to vacate the defendant's plea and found that the defendant's reliance on counsel's erroneous advice rendered his plea involuntary and unintelligent. The Ohio Supreme Court reversed the Court of Appeals, finding that the defendant had not satisfied the second prong of the test as defendant "must show that he would not have pleaded guilty to the reduced charge if his attorney's advice had been correct." Id. at 525. The Supreme Court also stressed that "the trial court was in a better position to evaluate the motivations behind the guilty plea than is an appellate court which is only reviewing the record of the hearing.
In the case at bar, defendant raises the claim of ineffective assistance of counsel, yet can point to nothing that substantiates this claim. He does not point to or claim any bad or erroneous advice from his counsel. The basis for defendant's claim of ineffective assistance of counsel seems to be that his counsel did not object to, nor seek clarification of, what he now claims were confusing comments as to the sentencing structure. However, the comments by the court regarding the possible sentences were not confusing when considered in toto, and defendant indicated at every juncture that he understood. If he was confused, it was incumbent upon him to say so when asked. He cannot maintain that he understands and later prevail on a claim that he did not understand. If a defendant receives the proper information, then it can ordinarily be assumed that he understands the information. State v. Carter (1979), 60 Ohio St.2d 34,38; State v. Purewal (Apr. 22, 1999), Cuyahoga App. No. 74707, unreported. We must presume that the defendant understood what he claimed to understand. State v. Dawson (Jan. 21, 1993), Cuyahoga App. No. 61828, unreported; State v. Correa-Castillo
(Jan. 21, 1999), Cuyahoga App. No. 74393, unreported.
Defendant had capable, vigorous and experienced counsel in this case. The record reflects that they investigated every possible defense to the charges, hired experts and investigators, interviewed witnesses, filed the appropriate motions, and were prepared to go forward with defendant's defense. We find no basis for defendant's contention that they were ineffective. Defendant has not pointed to any deficiencies that lead us to believe there would have been a different outcome or plea.
Assignment of Error V is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DYKE, A.J., and TIMOTHY E. McMONAGLE, J., CONCUR.
 _________________________________ JAMES M. PORTER, JUDGE.