[Cite as *State v. Gilmore*, 2016-Ohio-2654.]

COURT OF APPEALS
PERRY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 15-CA-00017 |
| THERESA S. GILMORE | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Perry County Court of Common Pleas, Case No. 14-CR-0024

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 20, 2016

APPEARANCES:

For Plaintiff-Appellee

JOSEPH A. FLAUTT
Perry County Prosecuting Attorney
111 North High Street, Box 569
New Lexington, OH 43764

For Defendant-Appellant

JAMES SWEENEY
341 South Third St., Ste. 300
Columbus, OH 43215

*Gwin, P.J.*

{¶1} Appellant Teresa Gilmore ["Gilmore"] appeals her conviction and sentence after a negotiated guilty plea in the Perry County Court of Common Pleas.

*Facts and Procedural History*

{¶2} On April 30, 2014, Gilmore was indicted on one count of Complicity to Illegal Manufacture of Drugs in violation of R.C. 2923.03 (A)(2), R.C. 2925.04 (A) and R.C. 2925.04(C)(3)(a); one count of Complicity to Aggravated Possession of Drugs in violation of R.C. 2923.03 (A)(2), R.C. 2925.11(A) and R.C. 2925.11 (C)(1)(c), felonies of the second degree; and one count of Complicity to Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs in violation of R.C. 2923.03 (A)(2); R.C. 2925.041 (A) and R.C. 2925.041(C), a felony of the third degree.

{¶3} On July 16, 2014, Gilmore pled guilty to one count of Complicity to Illegal Manufacture of Drugs, a felony of the second degree. The state dismissed the remaining counts in exchange for Gilmore's plea of guilty.

{¶4} On April 19, 2014, Gilmore filed a motion to withdraw her guilty plea. The trial court scheduled a hearing on Gilmore's motion for September 9, 2015. Gilmore failed to appear for the scheduled hearing.

{¶5} Gilmore was arrested in South Carolina and returned to Ohio. On June 26, 2015, the trial court conducted a hearing on Gilmore's bond and her motion to withdraw her guilty plea.

{¶6} By judgment entry filed July 2, 2015, the trial court overruled Gilmore's motion to withdraw her guilty plea.

**{¶7}** On July 18, 2015, the trial court sentenced Gilmore to four years of imprisonment and a one-year driver's license suspension.

*Assignments of Error*

**{¶8}** Gilmore raises two assignments of error,

**{¶9}** "I. THE TRIAL COURT FAILED TO PROPERLY ADVISE DEFENDANT — APPELLANT OF POST-RELEASE CONTROL, THUS HER GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, AND INTELLIGENTLY MADE.

**{¶10}** "II. THE TRIAL COURT ERRED IN REFUSING TO GRANT APPELLANT'S PRE-SENTENCE MOTION TO WITHDRAW HER GUILTY PLEA."

**Standard of Review – Withdraw of Guilty Plea.**

**{¶11}** The entry of a plea of guilty is a grave decision by an accused to dispense with a trial and allow the state to obtain a conviction without following the otherwise difficult process of proving his guilt beyond a reasonable doubt. *See Machibroda v. United States*, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473(1962). A plea of guilty constitutes a complete admission of guilt. Crim. R. 11(B)(1). "By entering a plea of guilty, the accused is not simply stating that he did the discreet acts described in the indictment; he is admitting guilt of a substantive crime." *United v. Broce*, 488 U.S. 563, 570, 109 S.Ct. 757, 762, 102 L.Ed.2d 927(1989).

**{¶12}** Crim. R. 32.1 governs the withdrawal of a guilty or no contest plea and states: "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶13} A defendant does not have an absolute right to withdraw a guilty plea prior to sentencing, however; a trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. *State v. Graham*, 5th Dist. Holmes No. 04-CA-001, 2004–Ohio–2556, ¶ 38, *citing State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992), at paragraph one of the syllabus.

{¶14} Some factors a trial court may consider when making a decision on a motion to withdraw a guilty plea are: (1) prejudice to the state; (2) counsel's representation; (3) adequacy of the Crim.R. 11 plea hearing; (4) extent of the plea withdrawal hearing; (5) whether the trial court gave full and fair consideration to the motion; (6) timing; (7) the reasons for the motion; (8) the defendant's understanding of the nature of the charges and the potential sentences; and (9) whether the defendant was perhaps not guilty or has a complete defense to the charge. *State v. Cuthbertson*, 139 Ohio App.3d 895, 898–899, 746 N.E.2d 197 (7th Dist. 2000), *citing State v. Fish*, 104 Ohio App.3d 236, 661 N.E.2d 788 (1st Dist. 1995); *Accord*, *State v. Pitts,* 5th Dist. Stark No. 2012CA00234, 2014-Ohio-17, ¶21. No one *Fish* factor is conclusive. *Cuthbertson, supra*. In addition, when weighing the ninth factor, "the trial judge must determine whether the claim of innocence is anything more than the defendant's change of heart about the plea agreement." *State v. Davison*, 5th Dist. Stark No. 2008–CA–00082, 2008–Ohio–7037, ¶ 45, *citing State v. Kramer*, 7th Dist. Mahoning No. 01–CA–107, 2002–Ohio–4176, ¶ 58. The good faith, credibility and weight of a defendant's assertions in support of a motion to withdraw guilty plea are matters to be resolved by the trial court, which is in a better position to evaluate the motivations behind a guilty plea than is an appellate court in reviewing a record of the

hearing. *Xie, supra*, 62 Ohio St.3d at 525*, citing State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977).

**Gilmore's First Assignment of Error – Failure to properly advise concerning post-release control.**

{¶15} "If a trial court fails to literally comply with Crim.R. 11, reviewing courts must engage in a multitiered analysis to determine whether the trial judge failed to explain the defendant's constitutional or nonconstitutional rights and, if there was a failure, to determine the significance of the failure and the appropriate remedy." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶30.

{¶16} Post-release control constitutes a portion of the maximum penalty. *State v. Jones*, 5th Dist. Richland Nos. 10CA75, 10CA76, 10CA77, 2011–Ohio–1202. In *State v. Clark*, *supra*, the Ohio Supreme Court concluded that the right to be informed of the maximum possible penalty and the effect of the plea are subject to the substantial compliance test. 119 Ohio St.3d at 244, 893 N.E.2d 462, 2008–Ohio–3748 at ¶ 31. (Citations omitted). Under this standard, a slight deviation from the text of the rule is permissible as long as the totality of the circumstances indicates, "the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶17} When the trial judge does not substantially comply with Crim.R. 11 in regard to a non-constitutional right, reviewing courts must determine whether the trial court partially complied or failed to comply with the rule. *State v. Clark*, 119 Ohio St.3d at ¶32, 2008-Ohio-3748, 893 N.E.2d 462.

**{¶18}** If there is partial compliance, such as mentioning mandatory post release control without explaining it, the plea is only to be vacated if the defendant demonstrates a prejudicial effect. *Clark*, at ¶32. The test for prejudice is "whether the plea would have otherwise been made." Id. *quoting Nero* 56 Ohio St.3d 108, 564 N.E.2d 474. However, if the trial court completely fails to comply with the rule, the plea must be vacated; a showing of prejudice is not needed to be demonstrated in that instance. *Clark*, 119 Ohio St.3d at ¶32, 2008-Ohio-3748, 893 N.E.2d 462.

**{¶19}** In the case at bar, the following exchange occurred,

COURT       The guilty plea form you have signed here today contains references to and explanations of the term post release control. Have you reviewed these terms with your attorney?

DEFENDANT       Yes, Your Honor.

COURT       Are you satisfied that you understand those terms and the possible implication post release control could have for you?

DEFENDANT       Yes, Your Honor.

T., Change of Plea, filed Sept. 8, 2015 at 6. Thus, the trial court partially complied by mentioning post release control during the change of plea hearing and referring to the plea agreement that Gilmore and her attorney had signed. Accordingly, Gilmore may only withdraw her plea if she demonstrates a prejudicial effect. *Clark* at ¶32. The test for prejudice is "whether the plea would have otherwise been made." Id. *quoting Nero* 56 Ohio St.3d 108, 564 N.E.2d 474.

**{¶20}** In the case at bar, Gilmore does not refer to any portion of the record nor does she argue that she would not have entered her negotiated guilty plea had the trial

court given her a more detailed explanation during the change of plea hearing. Thus, Gilmore has failed in her burden to demonstrate a prejudicial effect.

**{¶21}** Gilmore's first assignment of error is overruled.

**Gilmore's second assignment of error – Failure to permit withdraw of plea.**

**{¶22}** Although the general rule is that motions to withdraw guilty pleas before sentence are to be freely given and treated with liberality, the right to withdraw a plea is not absolute. *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715(1992) at paragraph one of the syllabus. Trial courts must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea. Id. Thereafter, the decision to grant or deny a pre-sentence motion to withdraw a guilty plea is within the sound discretion of the trial court. Id.

**{¶23}** In determining whether to grant a motion to withdraw a guilty plea, the trial court should consider the circumstances surrounding the defendant's plea, including whether the defendant was represented by competent counsel at a full hearing and voluntarily waived his right to trial. *See State v. Hamblin* 12th Dist. Butler No. CA-2000-07-154, 2001 WL 290161(March 26, 2001); *State v. Kimbrough,* 5th Dist. Stark No. CA-7363, 1988 WL 38018 (March 28, 1988). In addition, the court should examine whether the withdrawal of the plea will prejudice the prosecution, the timing of the motion, the reasons given for the withdrawal, the defendant's understanding of the charges and penalties, and the existence of a meritorious defense. *Id. see also, State v. Fish*, 104 Ohio App.3d 236, 240, 661 N.E.2d 788(1st Dist. 1995).

**{¶24}** With respect to statements made during change of plea hearings, the United States Supreme Court has stated,

[T]he representation of the defendant, his lawyer, and the prosecutor in such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Machibroda v. United States*, 368 U.S. 487, 497, 82 S.Ct. 510, 515(1962). Generally, a self-serving affidavit or statement is insufficient to demonstrate manifest injustice. *State v. Laster,* 2nd Dist. Montgomery No. 19387, 2003–Ohio–1564, ¶8. An appellant's bare assertions of coercion are self-serving and insufficient to show manifest injustice. See *State v. Brown,* 167 Ohio App.3d 239, 2006-Ohio-3266(10th Dist.), ¶ 13. The good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by the trial court. *State v. Smith,* 49 Ohio St.2d 261, 361 N.E.2d 1324(1977), at paragraph two of the syllabus.

**{¶25}** In the case at bar, Gilmore claims the trial court erred in not allowing her to withdraw her negotiated guilty plea due to a breakdown of the attorney–client relationship.

**{¶26}** The right to competent counsel does not require that a criminal defendant develop and share a "meaningful relationship" with his attorney. *Morris v. Slappy*, 461 U.S. 1, 13, 103 S.Ct. 1610, 1617, 75 L.Ed.2d 610(1983); *State v. Blankenship*, 102 Ohio App.3d 534, 657 N.E.2d 559(12th Dist. 1995); *State v. Burroughs*, 5th Dist. Delaware No. 04CAC03018, 2004-Ohio-4769, ¶ 11.

**{¶27}** In the context of reviewing a claim by the defendant that the trial court abused its discretion by overruling the defendant's request to discharge court appointed counsel and to substitute new counsel for the defendant the courts have taken the approach that the defendant must show a complete breakdown in communication in order to warrant a reversal of the trial court's decision. In *State v. Cowans*, 87 Ohio St.3d 68, 1999-Ohio-250, 717 N.E.2d 298(1999) the Court noted: "[e]ven if counsel had explored plea options based on a belief that Cowans might be guilty, counsel's belief in their client's guilt is not good cause for substitution. "' A lawyer has a duty to give the accused an honest appraisal of his case. * * * Counsel has a duty to be candid; he has no duty to be optimistic when the facts do not warrant optimism.'" *Brown v. United States,* 264 F.2d 363, 369(D.C.Cir. 1959) (*en banc*), *quoted in McKee v. Harris*, 649 F.2d 927, 932 (2nd Cir. 1981) "'If the rule were otherwise, appointed counsel could be replaced for doing little more than giving their clients honest advice.'" *McKee,* 649 F.2d at 932, *quoting McKee v. Harris* (S.D.N.Y.1980), 485 F.Supp. 866, 869." *Cowans*, 87 Ohio St.3d at 73, 717 N.E.2d at 304-305.

**{¶28}** In a similar vein, it has been held that hostility, tension, or personal conflicts between an attorney and a client that do not interfere with the preparation or presentation of a competent defense are insufficient to justify a change in appointed counsel. See *State v. Henness*, 79 Ohio St.3d 53, 65-66, 679 N.E.2d 686(1997). Furthermore, "[m]erely because appointed counsel's trial tactics or approach may vary from that which appellant views as prudent is not sufficient to warrant the substitution of counsel." *State v. Glasure,* 132 Ohio App.3d 227, 239, 724 N.E.2d 1165 (7th Dist. 1999); *State v. Evans*

(2003), 153 Ohio App.3d 226, 235-36, 2003-Ohio-3475, 792 N.E.2d 757(7th Dist.), ¶31; *State v. Newland*, 4th Dist. Ross No. 02CA2666, 2003-Ohio-3230, ¶11.

**{¶29}** A defendant has no constitutional right to determine trial tactics and strategy of counsel. *State v. Cowans*, 87 Ohio St.3d 68, 72, 717 N.E.2d 298(1999); *State v. Conway,* 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 150; *State v. Donkers,* 170 Ohio App.3d 509, 867 N.E.2d 903, 2007-Ohio-1557 (11th Dist.) , ¶ 183. Rather, decisions about viable defenses are the exclusive domain of defense counsel after consulting with the defendant. Id. When there is no demonstration that counsel failed to research the facts or the law or that counsel was ignorant of a crucial defense, a reviewing court defers to counsel's judgment in the matter. *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189(1980), *citing People v. Miller*, 7 Cal.3d 562, 573-574, 102 Cal.Rptr. 841, 498 P.2d 1089(1972); *State v. Wiley*, 10th Dist. Franklin No. 03AP-340, 2004- Ohio-1008, ¶ 21.

**{¶30}** At the hearing on Gilmore's motion to withdraw her negotiated guilty plea, the following exchange took place,

> COURT        Alright. [sic.] Thank you. Ms. Gilmore, your attorney has indicated that you wish to have other counsel—are you going to hire another attorney?
>
> DEFENDANT        I can't right now at this point. But I do wish to request that I did have the same phone number and I still do. Last time I was in here in front of you all, I had the same phone number, I still got now, my phone is down there in county lockup with the same phone numbers the same active—I never got a call one. I was told I would be notified of any

court dates—everybody got my phone number, the jail house did, she did and everyone up here did.  I never got a phone call—I still got the phone active; you guys can run it through and track it.  I never ran—I made Perry County my home for years,

COURT      Weren't you found in South Carolina?

DEFENDANT      Yes, I was, because I found out my father died, I never got to know—I went down there to see him and his family.  That was it—and I voluntarily come back to handle this.  I wanted to come back, I was already planning on it before this—I wanted to see my father buried, and meet my family I never got to meet.

COURT      Okay, what is the reason that you want to hire another attorney?

DEFENDANT      Because we never had another chance to talk, me and my attorney before the case ever hit, to where I can explain to her the problems in the case and the conflicts.  And when we did come in for the last time, I had all my notes, I did not understand when she asked me to sign the paper for the guilty plea, what I was signing in reality.  And when I came in front of the Court they asked me if I plead guilty—I argued it right here in this court room and said no, I do not plead guilty they said you signed the paper—I said I did not understand that.  I will, and I told her immediately afterwards—I said change the plea, I do not plead guilty for something I did not have knowledge of or did not do—I will admit to anything I do, but if I ain't done it—I'm not going to admit to it.  In addition, that is why we had the

conflict there in-between her and me. If she would review the case in depth and talk to me a little bit more instead of five minutes here or there before we enter a courtroom, yeah, I would keep her on as Counsel, but I needed more time to talk to a lawyer to review the case and explain to her what's true and what's not, what's going on with this case. I met her a whole ten minutes before we come in front of the judge.

COURT       Well, that was me. I'm the one that took your plea.

DEFENDANT       Yeah..,

COURT       And I don't remember you saying that you don't want to plea, because if you -if someone tells me that they don't want to plead guilty then I don't take their plea.

DEFENDANT       When I come in front you—you said my attorney pleads guilty, I do agree with that—I said no—I plead not guilty me and you talked back and forth for a few seconds and I went ahead and agreed for them because I couldn't change it right then there. Ask her; [sic.] as soon as I walked out the door I said I need to change my plea. I cannot plead guilty to something I did not do. I have no knowledge of it.

COURT       Alright, well I will have to review the plea hearing, I don't recall that, um, your plea has been entered, has been filed in and if someone tells me they don't want to do that—then I wouldn't have proceeded. I will look—review that hearing to determine um, what happened at that time—in the mean time, [sic.] Mr. Flautt, do you have recommendations for bond?

T. Bond Hearing, filed Sept. 8, 2015 at 3-5.  The change of plea hearing reveals the following,

> COURT        Mr. Flautt, would you state for the record the facts upon which the indictment was based?

> STATE        Yes, Your Honor.  The State believes that the evidence would show that the Defendant had purchased pseudoephedrine in supplied it to a couple gentlemen with the knowledge that they were going to use it to make methamphetamine in fact, in her statement she indicated that in return for providing that she would receive methamphetamine back and at the time she was detained she was found sticking a container under a pillow that did have meth in it and she tested positive for meth at the time.

> COURT        Alright, [sic.] thank you. Ms. Gilmore, is what Mr. Flautt stated substantially correct?

> DEFENDANT        I did buy the pseudoephedrine for a couple people, but the stuff under the pillow was not mine it was my boyfriend at the time, that also is involved in this case.

> COURT        Okay, So, the facts that Mr. Flautt stated are substantially correct?

> DEFENDANT        Yeah.

T., Change of Plea, filed Sept. 8, 2015 at 7.

{¶31}  Gilmore has not established that such a breakdown occurred between her and her counsel as to warrant the withdrawal of her negotiated guilty plea.  Gilmore pled guilty to one count of Complicity to Illegal Manufacture of Drugs, a felony of the second

degree. As part of the negotiated plea, the state dismissed one count of Complicity to Aggravated Possession of Drugs in violation of R.C. 2923.03 (A)(2), R.C. 2925.11(A) and R.C. 2925.11 (C)(1)(c), a felony of the second degree; and one count of Complicity to Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs in violation of R.C. 2923.03 (A)(2); R.C. 2925.041 (A) and R.C. 2925.041(C), a felony of the third degree.

{¶32} In the case at bar, as we have previously noted, Gilmore was adequately advised of her Crim.R. 11 rights, and the trial court conducted a thorough hearing on Gilmore's motion to withdraw, including reviewing the change of plea hearing statements. Therefore, contrary to Gilmore's contention, it appears from the record that she entered her plea knowingly and voluntarily.

{¶33} The evidence contradicts Gilmore's contention that she disputed the plea in front of the court. A change of heart or mistaken belief about pleading guilty is not a reasonable basis requiring a trial court to permit a defendant to withdraw her guilty plea. *State v. Lambros*, 44 Ohio App.3d 102, 541 N.E.2d 632(8th Dist. 1988).

{¶34} Having reviewed the record in light of Gilmore's first and second assignments of error, we find nothing to indicate that the trial court failed to substantially comply with Crim. R. 11 or Crim. R. 32.1. Therefore, we conclude that the trial court did not abuse its discretion in overruling Gilmore's pre-sentence motion to withdraw her guilty plea.

{¶35} Gilmore's second assignment of error is overruled.

{¶36} For the forgoing reasons, the judgment of the Perry County Court of Common Pleas is affirmed.

By Gwin, P.J., and

Baldwin, J., concur;

Hoffman, J., dissents

*Hoffman, J., dissents*

{¶37} I respectfully dissent from the majority's analysis and disposition of Appellant's first assignment of error.

{¶38} Because Appellant pled guilty to a second-degree felony, she was subject to a **mandatory** term of post-release control. While the trial court mentioned post-release control, it did not mention it was "mandatory". As such, I find the case sub judice is more closely aligned with the second example in *Clark (*paragraph 32*)* of failure to comply with the rule because the trial court did not inform Appellant post-release control was "mandatory". I find the trial court did not substantially comply with the rule.

{¶39} Accordingly, I would sustain Appellant's first assignment of error.[1]

---

[1] In light thereof, I would find Appellant's second assignment of error moot.